[No. B157600. Second Dist., Div. Eight. Mar. 27, 2003.]

1-800 CONTACTS, INC., Plaintiff and Appellant, v.
CRAIG S. STEINBERG, Defendant and Respondent.

## COUNSEL

Munger, Tolles & Olson, Mark H. Epstein, Garth T. Vincent, and James C. Rutten for Plaintiff and Appellant.

Law Offices of Craig S. Steinberg, Craig S. Steinberg; Law Offices of David A. Weitzman and David A. Weitzman for Defendant and Respondent.

## OPINION

**COOPER, P. J.**—This appeal is from an order striking a complaint under Code of Civil Procedure section 425.16, the anti-SLAPP (strategic lawsuits against public participation) statute.[1] The trial court ruled that plaintiff 1-800 Contacts, Inc.'s causes of action against defendant Craig S. Steinberg, for inducing breach of contract and "inducing breach of fiduciary and statutory duties," arose from acts by Steinberg in furtherance of his constitutional rights of petition or free speech in connection with a public issue (§ 425.16, subds. (b)(1), (e)), and that plaintiff had failed, both factually and for legal reasons, to establish a probability of prevailing on either claim. (§ 425.16, subd. (b)(1).) Plaintiff contests both elements of the ruling, and also contends that the court reversibly erred by refusing to allow it to take Steinberg's deposition before deciding the motion to strike. We find plaintiff's various contentions unavailing, and affirm the order striking the complaint.

### FACTS

This lawsuit is an offshoot of a controversy between plaintiff, a discount direct seller of replacement contact lenses headquartered in Utah, and a

---

[1]Undesignated section references are to the Code of Civil Procedure. The notice of appeal also refers to a "resulting judgment" and certain discovery orders "subsumed therein." But the record does not contain a judgment, and plaintiff has informed us that none was entered. The discovery orders are not independently appealable, but we will review them under section 906.

former in-house attorney for plaintiff, Jerrald D. Conder (Conder), which is the subject of a Utah lawsuit. Plaintiff contends that Conder has breached both fiduciary duties to plaintiff and a severance agreement with it, by offering his services to groups of optometrists, to seek laws regulating the activities of businesses like plaintiff. The present suit against Steinberg, a California lawyer and optometrist who has long been an opponent of plaintiff, charges him with inducing Conder's alleged breaches of contract and fiduciary duty, by facilitating meetings between Conder and representatives of optometric associations.

*The Complaint.*

The unverified complaint alleged as follows. Plaintiff, the largest business of its type, competes with Steinberg and other optometrists in selling contact lenses. Between April 1999 and his termination in August 2001, Conder, as an in-house counsel, assisted plaintiff in legislative initiatives, regulatory proceedings, and litigation, threatened and actual. In most of these matters, plaintiff stood in a position adverse to optometrists or their state boards or associations. Among the lawsuits was one Steinberg brought in 1999 on behalf of California optometrists, which settled in April 2001.[2]

Upon termination of his employment, Conder entered into a severance agreement (the agreement), which was attached to the complaint. In it, Conder gave plaintiff a general release, and plaintiff agreed to pay him six months' salary. In addition, Conder agreed not to (1) "discuss any confidential information of [plaintiff]" without plaintiff's written consent, on pain of forfeiting the right to severance pay; (2) for two years not to join, participate in, or be retained by any person or entity "having a majority of its sales from products or services similar to or competitive with those of [plaintiff]" in any territory where plaintiff did business; or (3) make "any public statement or statements to anyone concerning [plaintiff], its business objectives [or] management practices . . . or any other proprietary information of [plaintiff]."

On January 18, 2002, Steinberg met with Conder at a Las Vegas hotel, at which the midyear meeting of optometrists of the American Optometric Association was ongoing. Plaintiff alleged on information and belief that Steinberg, with Conder's knowledge and participation, had previously invited optometrists to meet with them and learn about, among other things,

---

[2]Steinberg later elaborated in a declaration that this suit was brought under Business and Professions Code section 17200, and the settlement required plaintiff to verify the currency of a customer's prescription with its issuer. Steinberg further described instances in which plaintiff did not comply with this requirement.

plaintiff's "strategies and other confidential information" that could assist them in taking legislative or legal action adverse to plaintiff. At a meeting in a hotel restaurant, Conder advised Steinberg that he had a confidentiality agreement with plaintiff, but also spoke about information he had learned while representing plaintiff, which he said could help others in taking such legislative or legal action.

On the same day, the complaint alleged, Steinberg and Conder met throughout the afternoon, in a hotel bar, with individuals who plaintiff alleged on information and belief "were representatives of various state optometric associations." Pursuant to Steinberg's request, Conder spoke about information he had gained while representing plaintiff, which could be used against it.[3] He also allegedly disclosed confidential communications between plaintiff and state officials, including the California Attorney General's Office. Conder and Steinberg announced further meetings that evening with other optometrists. On information and belief, those meetings went forward, and plaintiff's "confidential information" was discussed at them. Plaintiff also alleged on information and belief that Conder and Steinberg intended to hold similar meetings, with at least one scheduled for February 2002.

Incorporating these allegations, the complaint proceeded to set forth a first cause of action, for "Inducing Breach of Fiduciary and Statutory Duties." It alleged that by virtue of his former attorney-client relationship with plaintiff, Conder owed plaintiff "a fiduciary duty, including duties of loyalty and confidentiality." Those duties were allegedly "recognized and set forth in State Bar Rules of Professional Conduct throughout the United States, including the State Bars of both Utah and California." The complaint quoted from two of the Utah Rules of Professional Conduct (Utah Rules), one of which provides (with limited exceptions) that a lawyer "shall not reveal information relating to representation of a client" without its consent (Utah Rules, rule 1.6(a)), and the other of which provides that a lawyer shall not use information relating to a former representation to disadvantage the former client, except as allowed by Utah Rules, rule 1.6, or when the information is generally known. (Utah Rules, rule 1.9(b).) Conder allegedly had violated these rules by divulging "confidential information" to Steinberg, and by "improperly" using and disseminating information relating to his former representation of plaintiff.

---

[3]The subjects addressed allegedly included (1) plaintiff's legal analysis of state laws governing sale of contact lenses, their perceived loopholes, and plaintiff's legal and other strategies and perceived vulnerabilities with respect to them; (2) legislative efforts by plaintiff in various states, including plaintiff's strategies, vulnerabilities, and expenditures; (3) information Conder learned while representing plaintiff in litigation, as well as about other pending federal litigation; and (4) accusations by licensing boards, and plaintiff's strategies and practices concerning them.

The complaint proceeded to allege that Steinberg had induced Conder "to violate his fiduciary duties to [plaintiff], including duties established by the [Utah Rules] . . . ." Conder had violated these duties "by, among other things," using information acquired during his representation of plaintiff to its disadvantage, revealing confidential or privileged information to others including plaintiff's competitors, and assisting adverse parties in matters "which are the same or or substantially related to his prior representation . . . ." Steinberg's inducement of Conder so to act also allegedly violated "the standards set by and [Steinberg's] duties under the California Rules of Professional Conduct." In that regard, the complaint quoted Business and Professions Code section 6068, subdivision (e), which requires an attorney to maintain the confidence and preserve the secrets of a client, and rules 1-120 and 3-210 of the State Bar Rules of Professional Conduct (rules), which respectively provide that a member shall not knowingly induce or assist in any violation of the rules or the State Bar Act (Bus. & Prof. Code, § 6000 et seq.), and shall not advise the violation of any law or rule, unless the member in good faith believes it is invalid.

Plaintiff alleged that Conder's and Steinberg's conduct had caused it compensable injury, and that Steinberg's acts were malicious and oppressive, justifying punitive damages. In addition, plaintiff prayed injunctive relief, restraining Steinberg from "further disseminating [plaintiff's] privileged and/or confidential information," and requiring him to identify all persons "to whom he has thus far disseminated such information . . . ." In support of this prayer, plaintiff alleged that the information to which Conder was privy "is among the most sensitive information belonging to [plaintiff]," because the risk of adverse legislation or litigation by optometrists and their associations posed "[o]ne of the greatest threats to [plaintiff's] continuing viability." Hence, its dissemination to adverse parties had caused and would cause plaintiff irreparable harm. Plaintiff also requested that Steinberg be enjoined from representing any persons with interests adverse to plaintiff's in matters "substantially factually related to Conder's prior representation of [plaintiff]."

The complaint's second cause of action, for inducing breach of contract, incorporated the allegations of the first, and then alleged on information and belief that Steinberg knew of the agreement, and induced Conder to breach it by discussing confidential information with third parties, assisting persons who had a majority of sales competitive with plaintiff, and making public statements concerning "proprietary information" of plaintiff. Plaintiff alleged it had been damaged thereby, and prayed compensatory and punitive damages and injunctive relief on this cause of action too.

*The Motion to Strike.*

Immediately after the complaint was filed, plaintiff noticed a motion for a preliminary injunction, and Steinberg moved to strike the complaint under section 425.16. Steinberg's motion averred that his activities challenged by the complaint involved acts in furtherance of free speech and petition in connection with a public issue, namely "[t]he issue of illegal sales of contact lenses . . . ." The motion further contended that plaintiff could not establish a likelihood of success on the complaint, because Steinberg had neither intended nor acted to induce Conder to breach the agreement or his fiduciary duties. Furthermore, plaintiff could not show compensable damages, which had not occurred and in any event would consist of preclusion from disobeying the law.

In support of the motion, Steinberg filed his declaration, in which he first described his prior lawsuit against plaintiff, which had alleged that plaintiff was selling contact lenses without verifying the existence or terms of prescriptions for them, in violation of Business and Professions Code section 2546 et seq. During that litigation, Steinberg stated, he had gained extensive knowledge about plaintiff's operations, including what he termed its violation of state laws, much of it from Garth T. Vincent (Vincent), plaintiff's counsel in that case (and in the present case). Steinberg also had become acquainted with the other litigation involving plaintiff referenced in the present complaint. An association of state optometric regulatory boards had asked him to lecture about his lawsuit, and more recently several such boards had consulted him about proposed legislation and regulations concerning mail-order contact lens distribution. Steinberg stated that much of what he knew about plaintiff came from its own Securities and Exchange Commission (SEC) filings. He appended a recent one, which included discussion of lawsuits and administrative actions against plaintiff, and the caveat that "A significant portion of the Company's sales may not comply with applicable state laws and regulations governing the delivery and sale of contact lenses."

Steinberg declared that he first heard of Conder when he received an e-mail from him dated December 3, 2001, describing his background with plaintiff and stating he now planned to consult with optometric associations about governmental relations and legislation to "compel compliance with prescriptive requirements."[4] Familiar with Steinberg's work from the prior lawsuit, Conder suggested they might work together. He noted, however, that he had signed a "non-competition agreement" with plaintiff, and stated he would not "reveal any inside company information." Later that day,

---

[4]The e-mails quoted herein, and others, were attached to Steinberg's declaration.

Conder sent Steinberg another e-mail, in which he reiterated that he "would not reveal any confidential information."

Conder proposed that he and Steinberg work together in a legislative consulting business for state optometric associations regarding mail order contact lens sales, proposing legislation to "fix" weaknesses in existing law. The idea appealed to Steinberg, in part because Vincent had previously told him that plaintiff intended to pursue legislation and to violate laws that were ineffective. Steinberg contacted numerous state optometric associations, and arranged meetings coincident with the upcoming January 2002 national meeting in Las Vegas. He did not propose any litigation. In general e-mails, he identified Conder as an expert who "knows every loophole and every weakness in the current laws, and how to close them, knows the strategies of the mail order companies, and has extensive experience in the mail order business and in lobbying in it."

Steinberg met with Conder for the first time in Las Vegas. They discussed preparing "audits" of existing legislation and proposals for new legislation. According to Steinberg, Conder again stated "that he would not reveal any confidential information about [plaintiff] or its business practices and we should be sure to make that clear at our meetings. He did not want anybody to think they could buy or gain access to confidential information by hiring us. He reiterated that to each and every person we met with. He made it clear that he was not selling 'secret' information, he was only offering his skills in analyzing and fixing laws related to optometry." In addition, Conder told both Steinberg and the individuals they later met with that he had an agreement with plaintiff prohibiting him from working for persons that earned more than half their income from contact lens sales, and he asked both Steinberg and the associations whether they derived such income. Each answered negatively.

Steinberg further declared that "I am not aware that I know any confidential information regarding [plaintiff]." The information Conder had told him, at their initial meeting and the ensuing ones with association representatives, had already been within Steinberg's knowledge, from public sources or from his dealings with plaintiff and Vincent. However, Conder did tell him that he (Steinberg) was greatly disliked by plaintiff's principals, because of his prior lawsuit.

Steinberg declared that plaintiff had recently sold contact lenses to patients whose prescriptions, Steinberg had notified plaintiff, had already expired. In a supplemental declaration, Steinberg further documented these transactions, and attached a copy of the settlement agreement in his prior

action, which required plaintiff to follow procedures that these sales allegedly had violated. Steinberg stated he intended to file a cross-complaint for breach of his settlement agreement.[5]

In addition to his own declaration, Steinberg filed one by Conder. Conder declared that shortly after being terminated by plaintiff, he had been told by its officer John Nichols that both he and plaintiff's president, Jonathan Coon, concurred that the noncompetition provision of the agreement permitted Conder to work for optometrists associations.[6] Conder proceeded to ascertain that neither those associations nor, probably, any optometrist earned over half their income from contact lens sales. Conder thereafter contacted Steinberg, telling him he would not reveal confidential information regarding plaintiff, and that he had agreed to the noncompetition clause. Steinberg responded that to his knowledge no association came within it.

Conder met Steinberg in Las Vegas on January 18, 2002, and again told him that "I was not there to discuss or reveal confidential information with anyone." They then met with representatives of three optometric associations, and Conder told them he and Steinberg were interested in assisting them with legislative matters. Conder announced he had an agreement with plaintiff that precluded him from revealing confidential information, which he intended to honor, and he could discuss matters about plaintiff only if publicly known. He proceeded to discuss, among other things, a multidistrict litigation and a suit that had recently been commenced against plaintiff by Johnson & Johnson.[7] Although he also discussed plaintiff's legislative activity in several states, "There was no discussion regarding any matter that I was not certain was not available in the public arena." When asked the extent of plaintiff's lobbying expenditures in Texas, Conder stated he did not know, but that such expenditures could be looked up from public reports. Steinberg may have mentioned plaintiff's Web pages as lobbying tools used in Kansas and Texas. According to Conder, there was no discussion about "meeting with the California Attorney General."

Conder admitted having acquired confidential information during his employment with plaintiff, but denied ever having intentionally revealed any of it, and acknowledged "my obligation not to unless I know the information has been made public." Conder characterized as inaccurate assertions—in plaintiff's declarations in support of a preliminary injunction—that he had

---

[5]That agreement also provided that Steinberg would not file any more complaints or claims against plaintiff, except to enforce the settlement, or incite or assist others to do so.

[6]Plaintiff filed a responsive declaration by Nichols, who denied giving Conder such an opinion or advice.

[7]Steinberg declared that Conder had learned of this suit only from him.

made such disclosures to Steinberg and to the associations in Las Vegas, and he stated that plaintiff's witnesses were not competent to identify information as confidential, as opposed to known to the public and particularly in the eye care industry.[8]

Steinberg also filed a declaration by an expert optometrist concerning the hazards faced by contact lens wearers who did not regularly have their eyes examined and their prescriptions renewed.

### *Plaintiff's Opposition.*

In its opposition to the motion to strike, plaintiff asserted that Conder and Steinberg necessarily intended to "market" confidential and privileged information at the Las Vegas meetings, because Steinberg had no prior lobbying experience, and Conder admitted having little experience with optometric issues before plaintiff employed him. Steinberg, in other words, had agreed to join with Conder in "profiting from information Conder had learned while representing [plaintiff] . . . ." Plaintiff argued that Steinberg's association with and assistance of Conder in the disclosure of confidential information did not involve a valid exercise of First Amendment rights, subject to section 425.16, subdivision (b)(1). Moreover, plaintiff contended, the evidence established a probability it would prevail on both causes of action.

Plaintiff submitted several declarations in opposition. Vincent declared that during much of Conder's employment by plaintiff, he had participated in all of plaintiff's litigation, regulatory, and legislative matters, including analyzing state laws and developing strategies to combat optometrists' efforts to restrict plaintiff's operations. Vincent had never discussed with Steinberg plaintiff's "internal analysis of the strengths and weaknesses of laws . . . or its litigation, regulatory or legislative strategies," which Vincent considered privileged and confidential, and which plaintiff had treated as such. Plaintiff's president, Coon, reiterated this assertion in his own declaration, and stated he had never authorized Conder to disclose confidential information or use against plaintiff information he had learned while representing it. Coon reiterated the complaint's allegation that "One of the greatest threats to [plaintiff's] continuing viability is the risk of adverse legislation or litigation brought by optometrists and their associations," and that therefore dissemination of privileged or confidential information to which Conder was privy would likely cause plaintiff irreparable injury.

---

[8]Conder noted that "essentially identical" declarations had been filed in plaintiff's Utah action against him. In that case, plaintiff obtained a temporary restraining order against Conder's disclosing or utilizing confidential information or representing persons with interests adverse to plaintiff in matters identical or related to those he had handled for plaintiff.

Plaintiff filed two other declarations, which substantially repeated two others that had been filed on plaintiff's application for preliminary injunction. Stuart Williams, an attorney in the West Jordan City Attorney's Office in Utah, testified that an employee of plaintiff's had alerted him that Conder and Steinberg would be meeting at a Las Vegas hotel to discuss confidential information of plaintiff that could aid optometrists in taking legislative or legal action adverse to it. Williams "was asked to go to that location . . . and obtain any information I could about these meetings." The next day, January 18, 2002, Williams saw Conder and Steinberg in a hotel restaurant. Williams sat down near Conder, enabling him to hear their conversation. Conder told Steinberg about his prior representation of plaintiff and that he had signed a confidentiality agreement and been paid upon termination. "Mr. Conder also spoke about certain information he said he had learned while representing [plaintiff] that could help others succeed in taking legislative or legal action against [it]."

Williams followed Steinberg and Conder to a hotel bar, where he continued to listen as they met with representatives of optometric associations. Williams declared that Conder spoke about various matters referred to in the complaint. Williams's account of what he overheard is summarized in the margin.[9]

In a similar declaration, John G. Todd, a Las Vegas private investigator, stated that plaintiff had asked him to obtain information about the January 2002 meetings. He attended those in the bar, and sat close to Conder. Todd's account of what he heard largely tracked Williams's, although Todd also stated Conder had referred to plaintiff's analysis of jurisdictional and commerce clause issues, plaintiff's legislative efforts in a few additional states, "accusations made against [plaintiff] by various state optometry or licensing boards, including the State of Washington, and [plaintiff's] strategies and practices in connection with such communications."

---

[9]According to Williams, Conder spoke about the type of information he had mentioned to Steinberg, as well as the following: (1) Plaintiff's "analysis of various state laws governing the sale of contact lenses and their perceived loopholes." Also, "certain of [plaintiff's] strategies and perceived vulnerabilities with respect to such laws and regulations." (2) Plaintiff's "legislative efforts and experiences in various states, including Texas, Illinois and Utah." Conder "disclosed information regarding [plaintiff's] strategies, perceived vulnerabilities and amounts expended" in these efforts. (3) Conder "also disclosed information he had learned while representing [plaintiff] in various litigation matters, including lawsuits in California and Texas. He also spoke about multi-district litigation pending in Florida . . . and ongoing disputes between [plaintiff] and Johnson & Johnson . . . ." (4) "Mr. Conder also spoke about certain confidential communications between [plaintiff] and state officials, including communications with representatives of the California Attorney General's Office."

In a reply memorandum and a separate statement of objections, Steinberg asserted that neither of the last two declarants had demonstrated knowledge foundational to identifying confidential information. Steinberg also argued, among other things, that there existed no ·such California tort as inducing breach of fiduciary duty, and that plaintiff lacked entitlement to sue Steinberg, who had never been its attorney, for supposed violation of professional rules.

### The Court's Rulings.

The trial court granted the motion to strike. The court first ruled that the acts complained of were taken in furtherance of Steinberg's constitutional rights of free speech or petition (§ 425.16, subd. (b)(1)), in that they involved delivery of information to assist optometrists and their associations in taking legislative (or legal) action. The court at this point referred to the protection afforded by Civil Code section 47, subdivision (b) (the "litigation privilege") to discussions attendant to or connected with contemplated proceedings. (See *Cayley v. Nunn* (1987) 190 Cal.App.3d 300, 304 [235 Cal.Rptr. 385].)

The court then assessed plaintiff's showing regarding its probability of prevailing in the action. Observing that both causes of action required that Steinberg have known of the duties he allegedly induced Conder to breach, and have intended to induce their breach, the court held that plaintiff had failed to show, prima facie, that Steinberg had intended that Conder breach the agreement or his fiduciary duties to plaintiff. Steinberg had not solicited Conder so to act. Rather, the complaint and the evidence showed that Conder had approached Steinberg, with the idea of their allying to provide optometric associations services relating to legislation enforcing contact lens prescription requirements. "From the facts, it appears that Conder already intended to breach the contract by the time he contacted Steinberg . . . ."[10]

---

[10]The court added three further observations. First, it stated that the case appeared to involve no more than "a legitimate dispute between plaintiff and Conder over the release and/or disclosure of allegedly confidential information." Steinberg, not a party to the agreement, would not be subject to the exception to the litigation privilege for breach of a trade secrets agreement. Second, the court opined that actions such as the present one could disrupt access to the legislative process, and have a "dampening effect on the unobstructed presentation of claims . . . ." Finally, the court stated that even had plaintiff established a prima facie case of inducing breach of fiduciary duty, which was an unrecognized cause of action but tantamount to conspiracy to breach a fiduciary duty, Steinberg could legally not be liable for such a conspiracy because he owed no fiduciary duty to plaintiff.

Before the ruling on the motion to strike, plaintiff had sought leave to take Steinberg's deposition, in connection with both that motion and the then-pending motion for a preliminary injunction.[11] Section 425.16, subdivision (g) stays all discovery during the pendency of a motion to strike under subdivision (b), but allows the court to permit specified discovery, "on noticed motion and for good cause shown."

The court denied plaintiff's initial, ex parte application to depose Steinberg, because it did not constitute a noticed motion. Plaintiff then noticed a motion to take the deposition. As good cause, plaintiff averred that it needed to discover "the substance of" Steinberg's communications with Conder regarding plaintiff, as well as communications between them and others about Conder's former representation of plaintiff, together with related documents. The motion also stated that the deposition was necessary to prepare for the preliminary injunction hearing, and cited federal cases allowing expedited discovery in that connection. Plaintiff included a proposed notice of deposition, which requested that Steinberg produce a range of documents, including any related to any plans Steinberg or Conder had ever had "to take legislative, regulatory and/or legal action of any kind adverse to [plaintiff]," and any documents regarding "any proposals or arrangements to compensate you for providing assistance to any person(s) in a manner adverse to [plaintiff]."

Opposing the motion, Steinberg argued that plaintiff had not identified additional facts, necessary to establish a prima facie case, which the deposition would elicit. Steinberg added that the document request indicated that plaintiff's discovery effort was directed at obstructing his professional endeavors. He submitted a further declaration, affirming the nonexistence of many of the documents sought. Plaintiff filed a memorandum in rebuttal, discussing certain elements that allegedly would assist it in making a prima facie showing under section 425.16, subdivision (b)(1).

Citing *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226 [83 Cal.Rptr.2d 677], the trial court denied the motion, ruling that plaintiff had failed to identify evidence in Steinberg's possession that would be necessary to oppose the motion to strike.

DISCUSSION

1. *Free Speech and Petition.*

Under section 425.16, subdivision (b)(1), a case or cause of action is subject to challenge by a special motion to strike if it arises from an act by

---

[11]The preliminary injunction motion was taken off calendar when the motion to strike was granted.

the defendant in furtherance of the defendant's constitutional rights of petition or free speech in connection with a public issue. Plaintiff's first contention is that the trial court erred in ruling that this action arose from acts of that kind, and therefore the motion to strike should have been denied at the threshold. This contention is plainly invalid.

Subdivision (e) of section 425.16 defines the acts in furtherance of petition or free speech rights that subdivision (b)(1) contemplates. They include statements made in connection with an issue under consideration by a legislative body (subd. (e)(2)), statements on an issue of public interest made in a place open to the public (subd. (e)(3)), and "any other conduct in furtherance of the exercise of the constitutional right of petition or . . . free speech in connection with a public issue or an issue of public interest" (subd. (e)(4)). Steinberg's communications with other optometrists and optometric agency representatives, inviting pursuit of prospective legislation concerning mail order contact lens sales, and his discussions of that subject both with Conder and with those representatives in public restaurants, all fall within one or more of these categories. (See, e.g., *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564] [communications preparatory to or anticipation of official proceedings come within § 425.16].)

Plaintiff does not dispute the foregoing. Rather, plaintiff contends that Steinberg's own evidence showed that his communications were not "valid exercises" of constitutional rights but rather were "unlawful," as alleged in the complaint. This argument is misplaced. ▮ "Plaintiff[']s argument 'confuses the threshold question of whether the SLAPP statute [potentially] applies with the question whether [an opposing plaintiff] has established a probability of success on the merits.' [Citation.] [¶] . . . 'The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law. If this were the case then the [secondary] inquiry as to whether the plaintiff has established a probability of success would be superfluous.' [Citations.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94-95 [124 Cal.Rptr.2d 530, 52 P.3d 703].) "Rather, any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.' [Citation.]" (*Id.* at p. 94.)

These principles were applied in a very similar context in *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294 [106 Cal.Rptr.2d 906] (*Fox*). The court there reversed the denial of a section 425.16 motion to

strike brought by a former in-house corporate counsel who had been sued for allegedly disclosing confidential and privileged information. The corporate plaintiff argued that the case did not come within the statute because the plaintiff "ha[d] no First Amendment right to disclose privileged and confidential documents . . . ." (*Fox, supra,* 89 Cal.App.4th at p. 305.) The *Fox* court rejected this contention, using language that the Supreme Court later adopted, as quoted above, in *Navellier v. Sletten, supra,* 29 Cal.4th at pp. 94-95. (*Fox, supra,* at p. 305.)

Plaintiff's effort to invert the review process under section 425.16 is not validated by *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356 [102 Cal.Rptr.2d 864]. That decision explicitly recognized that the validity of the defendant's acts comes into play in the second stage of the statutory analysis. (*Id.* at pp. 1365, 1367.) It held, however, that the defendants, having admitted engaging in *illegal* campaign contributions (the subject of the suit), had established that their acts had not been in furtherance of their constitutional rights. (*Id.* at pp. 1361, 1365-1367.) Unlike *Paul for Council,* the present case is distinctly not one "in which defendants have effectively conceded the illegal nature of their . . . activities . . . ." (*Id.* at p. 1367.)

 The trial court correctly found that plaintiff's causes of action arose from acts in furtherance of Steinberg's rights of petition or free speech.

2. *Probability of Prevailing.*

The second inquiry before the trial court under section 425.16, subdivision (b)(1) was whether plaintiff established a probability it would prevail in the action. Plaintiff challenges the court's determination that it did not do so, with respect to either cause of action in the complaint. We first briefly review the standards applicable to this question. ·

 In order to establish the necessary probability of prevailing, plaintiff was required both to plead claims that were legally sufficient, and to make a prima facie showing, by admissible evidence, of facts that would merit a favorable judgment on those claims, assuming plaintiff's evidence were credited. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733]; *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823-824, 830 [33 Cal.Rptr.2d 446]; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497-1498 [45 Cal.Rptr.2d 624] [disapproving consideration of statements made on information and belief].) This burden is somewhat akin to that required to resist a nonsuit (*Wilcox, supra,* 27 Cal.App.4th at p. 824), or to move for summary judgment. (See *Aguilar v.*

*Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851-852 [107 Cal.Rptr.2d 841, 24 P.3d 493].)[12]

When assessing the plaintiff's showing, the court must also consider evidence that the defendant presents. (§ 425.16, subd. (b)(2).) The court does not, however, weigh that evidence against the plaintiff's, in terms of either credibility or persuasiveness. Rather, the defendant's evidence is considered with a view toward whether it defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element. (*Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at p. 821; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906 [120 Cal.Rptr.2d 576].)

Finally, on appeal from an order granting or denying an anti-SLAPP motion, we review de novo the trial court's determination regarding the plaintiffs' probability of prevailing. (E.g., *Kashian v. Harriman, supra,* 98 Cal.App.4th at p. 906; *Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548 [46 Cal.Rptr.2d 880].)

A. *Inducing Breach of Contract.*

Guided by the foregoing principles, we consider first the cause of action for inducing breach of the agreement. ▮ The elements of this tort—a species of intentional interference with contractual relations—are a valid contract between the plaintiff and a third party, defendant's knowledge of it, "defendant's intentional acts designed to induce a breach . . . of the contractual relationship," consequent breach, and resulting damage. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513] (*Quelimane*).)

▮ Plaintiff's unverified complaint summarily alleged that Steinberg had induced Conder to breach the provisions of the agreement with plaintiff by which Conder had agreed not to discuss plaintiff's "confidential information" without its consent, make public statements regarding various "proprietary information" of plaintiff, or assist persons that derived a majority of their sales from products or services competitive with plaintiff's. The trial court ruled that plaintiff had failed to show a probability of success with respect to the element involving intent to induce a breach of the agreement. The court noted Steinberg's evidence that Conder had approached him, and summarized the state of the evidence as being that any breach of the agreement by Conder was a product of his own conduct and preexisting intent, not Steinberg's.

---

[12]The required showing has been termed one of "minimal merit." (*Navellier v. Sletten, supra,* 29 Cal.4th at pp. 89, 95 & fn. 11.)

Plaintiff argues that the trial court improperly required a showing of "specific intent" by Steinberg to induce Conder to breach. Rather, plaintiff avers, the necessary intent comprised knowledge that a breach was substantially likely to occur as a result of Steinberg's actions. Although this restatement of the intent element is generally accurate, it does not dictate a different result.[13]

 In *Quelimane, supra,* 19 Cal.4th at page 56, the Supreme Court approvingly quoted the Restatement Second of Torts' statement that intentional interference with a contract occurs when the defendant " 'knows that the interference is certain or substantially certain to occur as a result of his action.' " (Accord, *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1155-1156 [131 Cal.Rptr.2d 29, 63 P.3d 937] [intentional interference with prospective economic advantage].) Plaintiff did not establish a prima facie case that this was so here. The evidence showed that from the commencement of Steinberg's acquaintance with Conder, and throughout the events addressed by the complaint, Conder repeatedly assured Steinberg that he would not disclose and was not disclosing any confidential information of plaintiff's, in part because he had signed a confidentiality agreement with plaintiff. Moreover, in Steinberg's presence, Conder stated and restated his contractual obligation not to work for a defined class of competitors, and obtained assurances that neither Steinberg nor the optometric associations were within that class. Whether or not a breach of the agreement occurred, the evidence did not show or substantiate that Steinberg—either in agreeing to work with Conder on a subject of mutual concern or in inviting or arranging for others interested to meet with them—acted with knowledge that any such breach would thereby be caused. Contrary to plaintiff's argument, Steinberg's references to Conder's experience and knowledge, in e-mails to other optometrists, are insufficient to constitute prima facie proof that Steinberg was acting with knowledge that Conder would violate his agreement.

There is a second, independent reason why there was no probability of plaintiff's prevailing on this cause of action. The tortious charge against Steinberg was precluded by Civil Code section 47, subdivision (b)(1), the "litigation privilege" as statutorily applicable to legislative proceedings. That privilege applies to claims for inducing breach of contract. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215 [266 Cal.Rptr. 638, 786 P.2d 365].)

---

[13]Regardless of the precise intent required, plaintiff's complaint arguably was legally insufficient as to this element. The inducing breach cause of action alleged simply that Steinberg "induced Conder to breach the agreement . . . ." And the allegations of the fiduciary duty cause of action, which were incorporated by reference, did not allege that Steinberg acted with any intent to induce a breach of the agreement.

Here, the entire thrust of Steinberg's activity was to enable the enactment of legislation, by soliciting other interested parties to pursue it, and assisting them with information and expertise. Civil Code section 47, subdivision (b) immunizes this activity from tort liability, much as it did the solicitation of litigation in *Rubin v. Green* (1993) 4 Cal.4th 1187, 1193-1196 [17 Cal.Rptr.2d 828, 847 P.2d 1044].

Plaintiff contests the availability of the privilege on the ground that Conder could not avail himself· of either it or the anti-SLAPP law's free speech protections, because of his agreement with plaintiff not to disclose confidential information. (See *Navellier v. Sletten, supra,* 29 Cal.4th at p. 94; *Paul v. Friedman* (2002) 95 Cal.App.4th 853, 869 [117 Cal.Rptr.2d 82].) But as the trial court noted, this case involves Steinberg's liability, vel non, not Conder's, and Steinberg never contractually relinquished his own rights, in respect of either lobbying, communication, or for that matter association with Conder. Whether or not Conder committed a breach of contract, the statutory privilege precludes liability on Steinberg's part.

Plaintiff offers four further reasons why the litigation (legislation) privilege should not apply. None of them is persuasive. First, plaintiff asserts that Steinberg's acts included "noncommunicative conduct," not embraced by the privilege, such as forming a "joint venture" with Conder and setting up meetings. But arranging to communicate and setting up meetings are integral parts of conducting meetings, which the Supreme Court has termed "clearly within the scope of the privilege." (*Rubin v. Green, supra,* 4 Cal.4th at p. 1195; see *id.* at pp. 1195-1196.)

Second, plaintiff asserts that the privilege does not protect attorneys when they violate ethical rules. The short answer is that Steinberg did not violate any such rules. Although the complaint summarily alleged that he had violated rules 1-120 and 3-210, there was no showing that he had either knowingly assisted in any violation of the rules or the State Bar Act (rule 1-120), or "advise[d] the violation of any law, rule, or ruling . . . ." (Rule 3-310.)

Third, plaintiff argues that the privilege is inapplicable because Steinberg's activities were too remote from the actual legislative process: "Steinberg and Conder did not even have so much as a single client for their would-be legislative consulting business at the time of the Las Vegas bar room meetings." Plaintiff mischaracterizes. Steinberg's communications with optometric associations concerned both pending legislation and the interest of those associations in pursuing various legislative initiatives. The privilege applies to communications related to anticipated proceedings, if

actually contemplated in good faith and under serious consideration. (*Rubin v. Green, supra,* 4 Cal.4th at pp. 1194-1195; see *Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 490-491 [104 Cal.Rptr. 650].)[14] Here they were so contemplated. That was the essential basis of plaintiff's claim of threatened injury.

Finally, plaintiff contends that Steinberg's and Conder's references to past and ongoing litigation about mail order contact lenses fell outside the privilege, because they were not "directly relevant" to proposed legislation. But the criterion of "reasonable relevancy to the subject matter" (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 220) is not that narrow, particularly where the subject matter involves legislation.

The trial court properly determined that plaintiff had not established a probability it would prevail on the cause of action for inducing breach of contract.

### B. *Breach of Fiduciary Duty.*

Plaintiff's remaining cause of action was for "inducing breach of fiduciary and statutory duties." Several legal considerations initially frame assessment of this claim and plaintiff's probability of prevailing on it. First, as both plaintiff and the trial court pointed out, the pleading's title does not correspond to any traditionally denominated California cause of action. However, plaintiff now acknowledges that "The trial court properly equated [the] claim for inducing breach of fiduciary duty to a claim for conspiracy to breach fiduciary duty." We shall analyze and treat it as such.[15]

Second, Conder's alleged breach of fiduciary duty involved duties under Utah law. As plaintiff stated below, "Utah law governs Conder's fiduciary and ethical duties because Conder is a Utah lawyer who formed an attorney-client relationship in Utah with [plaintiff], a Utah-based corporation." Concomitantly, the first cause of action's only colorable charge against Steinberg was conspiracy to breach Conder's fiduciary duties to plaintiff. As previously noted, there was no showing that Steinberg breached California's rule 1-120 or 3-210. Moreover, those rules do not create a cause of action. (Rule 1-100(A); see *Noble v. Sears, Roebuck & Co.* (1973) 33 Cal.App.3d 654, 658 [109 Cal.Rptr. 269, 73 A.L.R.3d 1164].)

---

[14]"The right of private parties to combine and make presentations to an official meeting and, as a necessary incident thereto, to prepare materials to be presented is a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings." (*Pettitt v. Levy, supra,* 28 Cal.App.3d at pp. 490-491.)

[15]Plaintiff also cites cases discussing liability for aiding or participating in a trustee's breach of duty (e.g., *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1102-1105 [3 Cal.Rptr.2d 236]). These decisions refer also to liability for conspiracy (e.g., *id.* at p. 1104), which suitably describes the gist of plaintiff's present cause of action.

The same is true, moreover, of the Utah Rules. Their violation does not per se "give rise to a cause of action, nor [does] it create any presumption that a legal duty has been breached." (Utah Rules, Scope; accord, *Archuleta v. Hughes* (Utah 1998) 969 P.2d 409, 413-414; *Kilpatrick v. Wiley, Rein & Fielding* (Utah Ct.App. 1996) 909 P.2d 1283, 1291, fn. 3.) In the latter case, the court observed that the Utah Rules "are not a basis for civil liability," and violations of them do not give rise to a cause of action for "malpractice" based on breach of an attorney's fiduciary duty. (*Kilpatrick*, at p. 1291, fn. 3.) This is significant because the complaint delineates the duties that Conder is alleged to have breached by reference to violations of Utah Rules, rules 1.6(a) and 1.9(b), concerning the disclosure and use of information "relating to" a lawyer's professional representation. (See *ante*, p. 574.)[16] But while the fiduciary duty of a Utah attorney comprises loyalty and confidentiality (*Kilpatrick, supra,* 909 P.2d at p. 1290), the latter does not necessarily extend to the broad reaches of Utah Rules, rules 1.6(b) and 1.9(b).

We need not determine the exact extent, or absence, of Conder's fiduciary duties vis-à-vis the matters alleged in the complaint. Without regard to any deficiency in this regard, like the trial court we perceive three distinct reasons why plaintiff did not establish a probability of success on the fiduciary duty cause of action against Steinberg.

First, liability for conspiracy to commit a tort requires that "The conspiring defendants must . . . have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. [Citations.]" (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582 [47 Cal.Rptr.2d 752].) Moreover, "Knowledge of the planned tort must be combined with intent to aid in its commission." (*Ibid.*) Here, however, there was insufficient evidence that Steinberg either knew that Conder was going to breach a fiduciary duty to plaintiff, or intended to assist in such a wrong. Once again, Conder repeatedly assured Steinberg, from the outset of their contact and throughout their discussions in Las Vegas, that he neither intended to nor would reveal any confidences of plaintiff. And plaintiff's declarations do not refute Conder's avowal that he limited his statements in Las Vegas to matters publicly known (cf. Utah Rules, rule 1.9(b)). The evidence does not support a finding that Steinberg was aware that confidential information would be disclosed, or knowingly acted to further such a disclosure.

---

[16]The complaint does not specifically cite Utah Rules, rule 1.9(a), which prohibits an attorney who formerly represented a client in a matter from representing, without the consent of that former client, another person in the same or a factually related matter in which the person's interests are materially adverse to those of the former client. But the factual allegations indicate that plaintiff relies on this rule too.

Plaintiff's arguments to the contrary are unavailing. Plaintiff avers that Steinberg must have become aware that Conder was disclosing confidential attorney-client information, at least by the conclusion of the first meeting with optometrists in the Las Vegas bar. But this assertion begs the basic question, that Steinberg knew that Conder's statements involved confidential information. Second, that Steinberg knew and informed others that Conder had been counsel for a mail order business, and was knowledgeable in the legislative area, also does not imply that Steinberg was engaged in peddling Conder's confidential information. In particular, Steinberg's e-mail reference to Conder's knowing "the strategies of the mail order *companies*" (italics added) did not, necessarily or distinctly, refer to confidential or privileged information of plaintiff.

Finally, plaintiff contends that the intent of Steinberg and Conder's undertaking, to assist optometrists in procuring legislation regarding mail-order contact lenses, necessarily involved Conder's violating Utah Rules, rule 1.9(a) (see *ante*, fn. 16). But, apart from the questions of whether the requirements of that rule comprise part of an attorney's fiduciary duty under Utah law (cf. *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1032 [117 Cal.Rptr.2d 685]), and whether and how they apply to counseling about legislation, plaintiff has not shown that any particular activity that occurred here violated the rule. For the facts presented did not show that Conder had achieved any new client representation.

The second reason why there was no probability of plaintiff's prevailing on its first cause of action is that the fiduciary duties it alleged Steinberg had conspired to breach were duties that he did not owe to plaintiff. The allegedly violated duties were Conder's. They arose—under Utah law (see *ante*, p. 588)—from Conder's status as plaintiff's attorney. But Steinberg never occupied such a position. Indeed, his prior professional posture as a California attorney had been directly adverse to plaintiff. Given this absence of any fiduciary duty owed plaintiff by Steinberg, and that the object of the alleged conspiracy was a breach of Conder's fiduciary duty, Steinberg could not as a matter of law have been liable for conspiracy to breach that duty. ▮▮▮ Conspiracy is not an independent cause of action, but rather a doctrine imposing liability for a tort upon those involved in its commission. (*Applied Equipment Corp v. Litton Saudi Arabia, Ltd.* (1994) 7 Cal.4th 503, 510-511 [28 Cal.Rptr.2d 475, 869 P.2d 454] (*Applied Equipment*). And "tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff . . . and is potentially subject to liability for breach of that duty." (*Id.* at p. 511.)

▮▮▮ Plaintiff acknowledges this general obstacle to imposing conspiratorial liability on Steinberg for a tort he was legally incapable of committing.

But plaintiff propounds a supposed qualification. As plaintiff summarizes in its reply brief: "[A]lthough the general rule is that a cause of action for inducing breach of fiduciary duty will not lie if the defendant did not independently owe fidiciary duties to the plaintiff, there is an exception to the general rule where the defendant acted for the defendant's 'own financial gain or advantage,' and not as the mere agent or employee of the fiduciary." Here, plaintiff continues, Steinberg acted for personal gain, because his purpose in joining with Conder was to undertake a profitable legislative consulting business.

Plaintiff's attribution of a "personal gain or advantage" exception to the bar against liability for conspiracy to breach a legal duty that is not binding on the defendant involves a misapprehension of relevant Supreme Court authority. In *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39 [260 Cal.Rptr. 183, 775 P.2d 508] (*Doctors' Co.*), on which plaintiff relies, the court held that attorneys and an expert engaged by an insurance company could not be liable for conspiring with it to violate Insurance Code section 790.03, which prescribes and proscribes certain unfair practices by insurers. After recognizing that the noninsurer defendants were not bound by the statutory duties allegedly breached, the court observed that "A cause of action for civil conspiracy may not arise . . . if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty." (*Doctors' Co., supra,* 49 Cal.3d at p. 44.)

With respect to the latter qualification, the court cited the rule that agents and employees cannot conspire with their principal or employer where they act on its behalf, " 'and not as individuals for their individual advantage.' " (*Doctors' Co., supra,* 49 Cal.3d at p. 45.) The court then stated that "Because the noninsurer defendants are not subject to th[e] duty and were acting merely as agents of the insurer 'and not as individuals for their individual advantage' [citation], 'they. cannot be held accountable on a theory of conspiracy.' [Citation.]" (*Ibid.*) However, the court added, agents could be subject to "conspiracy liability for conduct which the agents carry out 'as individuals for their individual advantage' and not solely on behalf of the principal [citation]." (*Id.* at p. 47.) In other words, an agent may be held liable if it conspires to commit a tort for its own personal advantage or gain, rather than simply on behalf of and for the benefit of its principal or employer. (*Id.* at pp. 46-47.)

Plaintiff reads *Doctors' Co., supra,* 49 Cal.3d 39, as recognizing an "individual advantage" exception, not only to the immunity of agents from

liability for conspiring with their employers, but also to the rule that a defendant, agent or otherwise, cannot actionably conspire to breach a duty to which it is not subject. Such a construction, however, was refuted by *Applied Equipment, supra,* 7 Cal.4th 503, which plaintiff does not cite. ▮▮▮ *Applied Equipment* repudiated the concept that a party to a contract could be liable for conspiracy to interfere tortiously with that contract. A primary rationale for the decision was that one cannot be liable for conspiracy if one is legally incapable of committing the underlying tort. (*Id.* at p. 510; see *id.* at pp. 511-514.) In reiterating that rule, the *Applied Equipment* court noted that *Doctor's Co.,* and another Supreme Court case on which it had relied,[17] were based on "two independent principles," namely that (1) parties not subject to a duty cannot be liable for conspiracy to breach it, and (2) "duly acting agents and employees cannot be held liable for conspiring with their own principals (the 'agent's immunity rule')." (*Applied Equipment, supra,* at p. 512.) But the exception for conduct undertaken in pursuit of a personal interest or advantage applies only to the agent's immunity rule. It does not relax the requirement that to be liable for conspiracy to breach a duty, the defendant must be bound by that duty and capable of breaching it. (See *id.* at pp. 512-513.)

This understanding of the relevant principles and authorities was recently expounded by Division One of this court in *Everest Investors 8 v. Whitehall Real Estate Limited Partnership XI* (2002) 100 Cal.App.4th 1102, 1106-1109 [123 Cal.Rptr.2d 297] (*Everest Investors*). *Everest Investors* also noted that certain decisions in the trust area (some of which plaintiff here cites) espouse the contrary understanding, that a nonfiduciary may conspire to breach another's fiduciary duty, if the nonfiduciary acts for personal gain or advantage. We find this position at odds with *Applied Equipment, supra,* 7 Cal.4th 503. Moreover, it does not logically follow. An exception to the agent's immunity, for conduct undertaken for personal advantage, is consistent with the immunity rule, because pursuit of a personal interest renders the actor more than merely the agent of another. But there is no such theoretical rationale for pursuit of a personal advantage creating liability for conspiracy to breach a duty that the defendant cannot itself breach. (See *Everest Investors, supra,* 100 Cal.App.4th at p. 1109.) And practically, to impose such an exception would effectively swallow up the rule, because personal interest or advantage is generally the impetus or goal of conspiratorial conduct.

▮▮▮ Breach of fiduciary duty is a tort that by definition may be committed by only a limited class of persons. (Cf. *Doctor's Co., supra,* 49 Cal.3d at p. 48.) In the case of Conder's fiduciary duty to plaintiff as its former

---

[17]*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032].

attorney, that class did not include Steinberg. Plaintiff's effort to hold him nevertheless liable for Conder's alleged breach through the doctrine of conspiracy was legally unauthorized.

Finally, a third reason why plaintiff's fiduciary duty cause of action did not carry a probability of prevailing is that the privilege of Civil Code section 47, subdivision (b)(1) applied. As discussed above with respect to the second cause of action, that privilege excluded liability by Steinberg for his activities in pursuit of regulatory legislation. We have already reviewed and rejected plaintiff's objections to this conclusion.

For the foregoing reasons, the trial court's ruling that plaintiff had not shown a probability of prevailing on its cause of action for conspiracy to breach fiduciary duty was correct.

3. *Steinberg's Deposition.*

■ The remaining issue is whether the denial of plaintiff's motion to take Steinberg's deposition before decision of the motion to strike was error, warranting reversal of the order granting the latter motion. As plaintiff acknowledges, an order denying a motion to permit discovery, notwithstanding section 425.16, subdivision (g)'s general discovery stay, is subject to review for abuse of discretion. (See *Sipple v. Foundation for Nat. Progress, supra,* 71 Cal.App.4th 226, 247 (*Sipple*).) For the following reasons, we conclude that no such abuse occurred here.[18]

Section 425.16, subdivision (g) allows the court to permit specified discovery "for good cause shown" on noticed motion. Decisions that have considered what constitutes such a showing of good cause have described it as a showing "that a defendant or witness possesses evidence needed by plaintiff to establish a prima facie case." (*Lafayette Morehouse, supra,* 37 Cal.App.4th at p. 868.) The showing should include some explanation of "what additional facts [plaintiff] expects to uncover . . . ." (*Sipple, supra,* 71 Cal.App.4th at p. 247; see also *Nicosia v. De Rooy* (N.D.Cal. 1999) 72 F.Supp.2d 1093, 1111.) Only in these circumstances is the discretion under section 425.16, subdivision (g) to be "liberally exercise[d]." (*Lafayette Morehouse, supra,* 37 Cal.App.4th at p. 868.) Discovery may not be obtained merely to "test" the opponent's declarations. (*Sipple, supra,* 71 Cal.App.4th at p. 247.)

---

[18]Plaintiff conjunctively contends that refusal to order the deposition engendered a denial of due process. Our holding that the refusal was not improper under the statute subsumes and moots that contention. Where properly applied, section 425.16, subdivision (g) does not infringe due process. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 867-868 [44 Cal.Rptr.2d 46] (*Lafayette Morehouse*).)

The trial court ruled that plaintiff had not made showing of this nature. Plaintiff disagrees, and cites a list of elements that its reply papers stated would be subjects of discovery. But as Steinberg pointed out below, the information that had already been adduced covered this ground, and established the scenario and basic elements of the case. And contrary to its present assertions, plaintiff did not in its papers below include the element that " 'Steinberg intended to induce Conder to breach his contract.' "

The request for discovery that plaintiff presented exceeded the contemplation of section 425.15, subdivision (g) in other respects. Plaintiff expressly sought to take Steinberg's deposition so as to prepare not only for the motion to strike but also for the motion for preliminary injunction, by which plaintiff sought to enjoin Steinberg from representing or assisting optometrists regarding mail order contact lens regulation, with or without Conder or plaintiff's confidential information. And to that end, the notice of deposition extended to documents beyond the elements of a prima facie case.

Under these circumstances, the denial of plaintiff's motion to depose Steinberg cannot be deemed an abuse of discretion. Moreover, the ruling could not have constituted reversible error in any event. As we have held, under plaintiff's allegations and undisputed facts, the claims against Steinberg, whatever their factual basis, were legally untenable, by reason of Civil Code section 47, subdivision (b), and the preclusion of conspiratorial liability for breach of an inapplicable duty. A deposition of Steinberg could not have changed that.

## DISPOSITION

The order granting the motion to strike the complaint is affirmed.

Rubin, J., and Boland, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 9, 2003. George, C. J., and Brown, J., did not participate therein.