Filed 10/3/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ABIR COHEN TREYZON SALO, LLP, et al., | B291636 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC687731) |
| v. | |
| ARTA LAHIJI, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David S. Cunningham, III, Judge.  Affirmed.

Parker Mills, and David B. Parker for Plaintiffs and Appellants.

Abir Cohen Treyzon Salo, Boris Treyzon, and Cynthia Goodman for Plaintiffs and Appellants.

Schlichter & Shonack, Jamie L. Keeton, and Jeremy P. Cowan for Defendant and Respondent.

\* \* \* \* \* \*

After a client fired her attorney and his firm, the firm placed a lien on the client's further recovery and then sued the client's daughter for defaming them in several online reviews. The daughter moved to dismiss the defamation claim under our anti-SLAPP law (Code Civ. Proc., § 425.16),[1] and the trial court granted the motion. The trial court's ruling was correct, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Legal representation*

Nahid Lahiji (Nahid)[2] retained attorney Alexander Cohen (Cohen) and his law firm Abir Cohen Treyzon Salo, LLP (the firm) in June 2017 to represent her in a dispute with the insurer of her home. Nahid obtained some preliminary recovery, and authorized the firm to retain $120,000 of that recovery. She nevertheless became dissatisfied with the firm's representation, and terminated the firm in November 2017. The firm thereafter placed a lien on any further recovery from the insurer under a theory of quantum meruit.

#### B. *Online posts*

On November 19, 2017 (nine days after the firm asserted its lien), a person using a Yelp account with the name "AI L." and with a photograph of Nahid's daughter, Arta Lahiji (Arta), posted

---

[1] "SLAPP" is short for Strategic Lawsuit Against Public Participation.

All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] To avoid confusion, we use the first names for family members who share the same last name. We mean no disrespect.

a review of the firm and Cohen (the Yelp review).  The reviewer recounted that she had hired Cohen to handle her "home insurance claim" and that Cohen had (1) used a law student "case manager" to negotiate with the insurer, (2) ignored the reviewer's request to inform her of expenses "over a certain threshold," (3) withheld disbursements to her longer than necessary, (4) improperly deducted expenses, and (5) repeatedly yelled when asked when checks would be cleared.  The review more broadly stated that the firm was "underhanded and shady," was "unprofessional and unethical," used "scare tactics," and had an "awful moral compass."  The reviewer warned readers to "stay away from this firm."

On November 21, 2017, an "anonymous" user posted an identical review on Avvo, an online lawyer directory.

On December 13, 2017, "Angela Helder" posted a review on the firm's Facebook page that read:  "Unprofessional and unethical group of attorneys . . . will botch your home owners insurance claim."

On December 14, 2017, reviews identical to the Yelp review were posted on the website Ripoff Report by "Nancy" in "Redondo Beach" and on Google by "Nahid Lahiji."

## II.    Procedural Background

### A.    *Complaint and initial discovery*

On December 19, 2017, Cohen and the firm sued Arta for defamation.[3]  Although the above recounted postings purported by name or content to be from Nahid, Cohen and the firm alleged

---

[3]     Cohen and the firm also sued Thuy Tran, who had posted a review on the firm's Facebook page, but Tran is not at issue in this appeal.

a "good faith belief" that *Arta* was the poster. Cohen and the firm sought compensatory damages, punitive damages and a post-judgment order enjoining Arta from publishing further defamatory statements and requiring her to remove the existing posts.

In January 2015, Nahid sent an email to Cohen explaining that *she*, and not her daughter, had posted the various reviews.

Rather than add Nahid as a defendant, Cohen and the firm proceeded to promulgate discovery against Arta. Specifically, they served her with one set of general interrogatories and with 119 special interrogatories.

## B. *Anti-SLAPP litigation*

On March 18, 2018, Arta filed an anti-SLAPP motion seeking dismissal of the defamation claim on the grounds that (1) the postings constituted "protected activity" within the meaning of the anti-SLAPP law, and (2) Cohen and the firm could not establish that the defamation claim had minimal merit. In support of the motion, Nahid submitted a sworn declaration attesting that *she* had "left [the] reviews" underlying the defamation claim and Arta submitted a sworn declaration attesting that she had not "post[ed]" any of the reviews at issue but was "aware" of Nahid's posts on Yelp, Avvo, Ripoff Report, and Google.

Arta's motion triggered the anti-SLAPP law's automatic stay of discovery. (§ 425.16, subd. (g).) On March 26, 2018, Cohen and the firm filed an ex parte motion to lift that stay in order to depose Nahid and Arta and to serve Yelp with a business records subpoena. Without waiting for the court to act on their motion (and thus in violation of the automatic stay), Cohen and the firm issued a subpoena on Yelp two days after they filed their

4

motion to lift the stay seeking 28 categories of documents, including the internet protocol (IP) addresses from which the Yelp review at issue was posted.  Following further briefing, the trial court denied the motion to lift the discovery stay.

After Cohen and the firm filed their opposition to Arta's anti-SLAPP motion, after Arta filed a reply, and after a hearing, the trial court granted Arta's motion in a 15-page order.  The court ruled that posting the online reviews constituted "protected activity" within the meaning of the anti-SLAPP law.  The court then ruled that Cohen and the law firm had not carried their burden of showing that their defamation claim had minimal merit.  Cohen's and the firm's "assertions that . . . Arta . . . posted the social media statements at the heart of [their] [c]omplaint," the court reasoned, "are speculative and not supported by the evidence in the record."  The court went on to award Arta, as the party prevailing on the anti-SLAPP motion, a total of $36,855 in attorney fees ($12,590 at the time of the dismissal and $24,265 in a post-judgment order).

### C. *Appeal*

Cohen and the firm timely appealed the dismissal.

## DISCUSSION

The anti-SLAPP law "provides a procedure for weeding out, at an early stage, *meritless* claims arising from" activity that is protected by the law.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)  Accordingly, a trial court tasked with ruling on an anti-SLAPP motion must ask two questions: (1) has the moving party "made a threshold showing that the challenged cause of action arises from protected activity" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056), and, if so, (2) has the nonmoving party "established . . . a probability that [he or it] will prevail" on the challenged cause of

action by showing that the claim has "minimal merit" (§ 425.16, subd. (b)(1); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 93-94)? We independently review a trial court's resolution of each question. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

## I.  Protected Activity

Among other things, the anti-SLAPP law defines "protected activity" to include "any written . . . statement . . . made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) As neither party disputes on appeal, reviews posted to an Internet website meet this definition of protected activity. (E.g., *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1145-1147; *Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, 310.)

Cohen and the firm offer one argument as to why the reviews posted in *this* case are not protected activity. Specifically, they argue that the anti-SLAPP law defines protected activity as pertaining to a "cause of action against a person arising from *any act of that person* in furtherance of the person's right of petition or free speech." (§ 425.16, subd. (b)(1), italics added.) Because Arta *denies* making the posts, plaintiffs reason, their cause of action is not "aris[ing] from an[y] act [of Arta]." We squarely rejected this precise argument in *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 929 (*Bel Air*). *Bel Air* expressly held that a defendant who denies engaging in the alleged conduct "may rely on the plaintiff's allegations alone" in assessing whether the conduct at issue is protected activity. (*Ibid.*) That is because it is "[the] plaintiff's complaint [that] ultimately defines the contours of the claims." (*Id.* at p. 936.) Not allowing the defendant to rely on the allegations alone, *Bel*

6

*Air* reasoned, "would have the perverse effect of making anti-SLAPP relief unavailable when a plaintiff alleges a baseless claim, which is precisely the kind of claim that [the anti-SLAPP law] was intended to address." (*Id.* at p. 929.) We are troubled by Cohen and the firm's failure to cite this directly applicable contrary authority anywhere in their briefs.

## II. Minimal Merit

Once a claim is shown to fall within the ambit of the anti-SLAPP law, the burden shifts to the plaintiffs to establish a "probability" of prevailing on that claim at trial. (§ 425.16, subd. (b)(1); *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 701.) In making this assessment, "the [trial] court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) The pleadings "frame the issue to be decided" (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 655, abrogated on other grounds, *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53), and the court then evaluates whether the evidence submitted by the parties and admissible at trial amounts to a "'sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited'" or instead whether the defendant is entitled to prevail "'as a matter of law.'" (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1235 (*Tuchscher*), quoting *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, superseded by statute on another point as stated in *Hart v. Darwish* (2017) 12 Cal.App.5th 218, 226, fn. 3; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906 (*Kashian*); *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26 (*Gilbert*) [nonmoving party must meet its

burden with "competent and admissible evidence"].) Because plaintiffs' evidence must be credited, a court is not to make credibility determinations or otherwise weigh the evidence submitted. (*Kashian*, at p. 906.)

To prove defamation, a plaintiff must establish "'(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720; Civ. Code, §§ 44, 45, 45a.) As always, the plaintiff must establish that the person sued is the one legally responsible for the tort. (See *Westside Estate Agency, Inc. v. Randall* (2016) 6 Cal.App.5th 317, 329 [lawsuit will be dismissed if plaintiff "su[es] the wrong party"].)

We independently agree with the trial court's conclusion that Cohen and the firm did not make a "prima facie showing" that *Arta* was legally responsible for the postings that underly their defamation claim. The posts themselves do not establish that Arta was the author or poster, as none of the posts are in Arta's name and their content suggests that the author was the one represented by Cohen and the firm—that is, Nahid.

Cohen and the firm point to four pieces of evidence that, in their view, constitute a "prima facie" showing that Arta was the author.

First, they point to the fact that the Yelp account from which the Yelp review was posted had Arta's photograph and the username "AI L." However, both Arta and Nahid explained that they *shared* that Yelp account and that Nahid—not Arta—had been the one who posted the review of Cohen and the firm. Cohen and the firm assert that Yelp's terms of service prohibit shared accounts, but those terms of service are not properly

8

before us because the trial court ruled them inadmissible, and that evidentiary ruling is not challenged on appeal.

Second, Cohen and the firm point to two emails sent to them on October 6, 2017.  The first email was sent from Nahid's email account to the firm's "case worker" on the matter.  The only portion of that email's content that is not redacted is the request: "Please blind copy *my mom and I* on the email."  (Italics added.) Four minutes later, Arta fired off a responsive email from her own account to Nahid, Cohen and the case worker that reads: "Correction: please blind copy *my daughter Arta and I*."  From this email exchange, Cohen in his declaration asserted that Arta "routinely masquerades as her mother in email and other online communications," and thus must have authored all of the reviews underlying the defamation claim.

These emails do not establish a prima facie showing that Arta authored the reviews.  To begin, Cohen's and the firm's theory as to why the emails show Arta's authorship of Nahid's email is unsupported by the emails themselves.  Their theory is that Arta sent the first email while attempting to pose as Nahid (which is why the first email refers to blind copying "my mom and I"), that she realized her mistake, and that she then sent the second email to correct it (which is why the second email asks that "my daughter Arta and I" be "blind cop[ied]").  It is impossible to confirm this theory from the emails themselves, particularly because the first email is so heavily redacted and does not even reflect who received it.  This theory also make no sense:  It is far more likely that Nahid made a typographic error when sending the first email that went to Cohen, Arta and the case worker and that Arta, seeing the error, sent an email replying to all from her own account correcting it, than it is that

9

Arta made a "slip of the tongue" while pretending to be Nahid, realized the error, and then for some reason logged in to her own email account and sent a corrective email. Further, and more to the point, even if we assume that Arta posed as her mother in the first email, the jump from authoring that email to posting all of the reviews at issue in this case is a leap—and a speculative one at that—because it requires us to assume that (1) Arta's impersonation of Nahid in one email means she impersonates Nahid in *all* Internet communications, and (2) Arta's impersonation of Nahid *once* means she *always* impersonates her. As our Supreme Court recently noted, "speculative inferences not supported by the evidence" fall short of establishing a prima facie showing. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 795.) Cohen's assertion in his declaration does not cure this deficiency because the trial court struck that assertion and that evidentiary ruling also is not challenged on appeal.

Third, Cohen and the firm point to the inconsistent use of the first-person single ("I") and plural ("we") in the Yelp review as proof that Arta wrote that review. While the posting does sometimes use "I" and sometimes "we," it is undisputed that Nahid included Arta in much of her correspondence with Cohen and the firm. More to the point, the reviewer says that "I hired . . . Cohen" and "I signed the retainer"—acts that the parties agree were undertaken by Nahid, not Arta.

Lastly, Cohen and the firm point to Nahid's request for an interpreter in the pending fee arbitration matter. However, the trial court struck that evidence and that ruling has not been challenged. As noted above, only admissible evidence can support a finding of a prima facie showing.

10

Cohen and the firm make three further arguments on appeal.

First, they assert that the trial court wrongly denied them the ability to make a prima facie showing by denying their motion to lift the statutory stay of discovery. A trial court may lift the statutory stay for "good cause" (§ 425.16, subd. (g); *Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1125 (*Britts*)), which requires a showing that the specific discovery sought is both "needed . . . to establish a prima facie case" and "tailored to that end." (*Britts*, at p. 1125; *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 593 (*1-800 Contacts*).) We review a trial court's denial of a motion to lift the stay for an abuse of discretion. (*1-800 Contacts*, at p. 593.)

The trial court did not abuse its discretion in denying the motion to lift the discovery stay. Cohen and the firm told the trial court that deposing Nahid and Arta and subpoenaing documents from Yelp would help them establish that: (1) Nahid had "never used the 'AI L.' Yelp account," (2) the "AI L." Yelp account was not a "'shared' account," as Arta and Nahid stated, (3) Nahid lacked the "computer savvy necessary to navigate" the various websites where the reviews were posted, (4) Nahid lacked the "command of the English language necessary to draft" the reviews, (5) "Arta used her phone, to which Nahid does not have access, to make the Postings," and (6) "[s]ome, or all, of the Postings were made from New York, New York, while Nahid was not residing in New York, but Arta was residing there." The first five reasons are aimed at testing Nahid's and Arta's declarations, but it is well established that "[d]iscovery may not be obtained merely to 'test' the opponent's declarations." (*1-800 Contacts, supra*, 107 Cal.App.4th at p. 593; *Sipple v. Foundation for Nat.*

11

*Progress* (1999) 71 Cal.App.4th 226, 247.) The final reason might be established by the IP addresses sought from Yelp, except that Cohen acknowledged that Arta and Nahid "share[d] the same [street] address" in Redondo Beach at the time the reviews were posted, so the IP addresses corresponding to the posts would not reveal *which one of them* made the post, rendering any "internet service protocol . . . discovery . . . inconclusive."

Second, Cohen and the firm contend that Arta's admission to being "aware" of Nahid's posts means that she took "a responsible part in [the] publication of defamatory matter." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1245 (*Shively*).) They are wrong. While *Shively* provides that "each person who takes a responsible part in a publication of defamatory matter may be held liable for the publication" (*ibid.*), Cohen and the firm cite no authority for the proposition that one person's awareness of another person's tortious conduct, without more, renders them "responsible" for that conduct.

Lastly, Cohen and the firm proclaim that Arta's evidence was "very weak." What matters, however, is not the *weakness* of Arta's evidence, but the *strength* of all the evidence. (See *Gilbert*, *supra*, 147 Cal.App.4th at p. 26.) Because, as we have explained, Cohen and the firm have not advanced anything beyond speculation that Arta was the author of the posts at issue, their defamation suit against her lacks minimal merit regardless of the persuasiveness of the evidence offered by Arta.

In light of our analysis, we have no occasion to discuss Cohen's and the law firm's defense of other elements of their defamation claim or the alternative bases for affirmance offered by Arta.

**DISPOSITION**

The judgment is affirmed.  Arta is entitled to her costs on appeal.

**CERTIFIED FOR PUBLICATION.**


_____, J.
HOFFSTADT

We concur:


_____, P.J.
LUI


_____, J.
CHAVEZ