No. 127,136

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CREATIVE PLANNING, LLC,
f/k/a CREATIVE PLANNING, INC.,
*Appellee/Cross-Appellant*,

v.

STEPHEN A. GRECO
and
SPOTLIGHT ASSET GROUP, INC.,
*Appellants/Cross-Appellees*.

SYLLABUS BY THE COURT

1.

The purpose of the Kansas Public Speech Protection Act (KPSPA), K.S.A. 60-5320 et seq., is two-fold: to encourage and protect a person's right to petition, speak, and associate freely about public issues or issues of public interest under the First Amendment to the United States Constitution while also protecting the rights of others to file meritorious lawsuits. K.S.A. 60-5320(b).

2.

To effectuate its purpose, the KPSPA permits a party, early in litigation, to move to strike a meritless claim that impedes the moving party's right to free speech, right to petition, or right of association under the First Amendment. K.S.A. 60-5320(d). Courts must balance the power of the motion to strike under the KPSPA to avoid the chilling effect of frivolous litigation on First Amendment rights while also protecting a party's right to pursue potentially meritorious claims for demonstrable injury. The motion to strike is not intended to be a litigation tactic to defeat potentially meritorious and permissible litigation through onerous discovery limitations.

1

3.

After a party files a motion to strike under K.S.A. 60-5320(d) of the KPSPA, the district court—upon a showing of good cause—may permit specified discovery, motions, or other pending hearings to proceed under K.S.A. 60-5320(e)(2) and may allow specific, limited discovery relevant to the motion to strike under K.S.A. 60-5320(e)(1). Good cause for limited, specific discovery related to a motion to strike under K.S.A. 60-5320(e) exists when the court finds that the information sought through formal discovery cannot be readily obtained through other means and that the information will assist the district court in determining whether the parties have established the elements supporting or defeating a motion to strike.

4.

Generally, the district court is entrusted with broad discretion to control discovery, and those discovery decisions will not be disturbed on appeal without a showing of a clear abuse of discretion. The KPSPA does not undermine or diminish the district court's broad authority to make discovery decisions but merely sets a different legal standard under which the district court exercises that discretion.

5.

The Legislature limited the ability to seek interlocutory review of a ruling on a motion to strike under the KPSPA to the *movant's* appeal from the district court's *denial* of a motion to strike—that is, the person who pursued and did not prevail on the motion to strike. See K.S.A. 60-5320(f)(2). Under the KPSPA, pendent jurisdiction cannot be used to expand appellate jurisdiction to permit the nonmovant's cross-appeal of the district court's interlocutory rulings not appealed by the movant.

Appeal from Johnson District Court; K. CHRISTOPHER JAYARAM, judge. Oral argument held July 8, 2025. Supplemental briefing filed July 31, 2025. Opinion filed May 15, 2026. Affirmed in part, dismissed in part, and remanded.

*Terrence J. Campbell*, *Erin K. Levy*, and *Matthew J. Rogers*, of Barber Emerson, L.C., of Lawrence, for appellants/cross-appellees.

*Melissa Hoag Sherman*, of Spencer Fane LLP, of Overland Park, and *Leslie A. Greathouse*, of the same firm, of Kansas City, Missouri, for appellee/cross-appellant.

Before COBLE, P.J., ISHERWOOD and HURST, JJ.

HURST, J.: The Kansas Public Speech Protection Act (KPSPA) was adopted to protect people from frivolous litigation that would inhibit free speech about matters of public concern—but it is not a sword to cut the legs from potentially meritorious claims through prohibitory discovery standards. Creative Planning LLC (Plaintiff) sued a former employee and his new company, Spotlight Asset Group Inc. (Spotlight) (collectively, Defendants), for allegedly violating the terms of a settlement agreement, asserting various claims against Defendants singularly and jointly. Defendants moved to strike portions of each claim under the KPSPA by alleging the speech at issue was related to a matter of public concern and thus protected by the First Amendment to the United States Constitution.

Although discovery in the underlying litigation is generally stayed after a defendant moves to strike under the KPSPA, Plaintiff sought discovery related to the motion to strike. The KPSPA allows for specific, limited discovery related to the motion to strike upon finding good cause for such. Over Defendants' objections, the district court significantly narrowed the requests and ordered discovery. Then Defendants also sought discovery, which the district court partially granted. The district court ultimately granted the Defendants' motion to strike three of Plaintiff's five claims, but found that portions of Plaintiff's claims for breach of contract and tortious interference with prospective business advantages and relationships could proceed. Therefore, the district court determined—based on the available evidence obtained through discovery—that Plaintiff

demonstrated a likelihood of success on the merits as to counts I and II and did not on counts III, IV, and V.

Defendants appeal the district court's denial of the motion to strike as to counts I and II because, according to Defendants, the district court wrongly permitted discovery that allowed the Plaintiff to obtain evidence to defeat the motion to strike as to those two counts. In an unusual posture, Defendants apparently concede that if this court considers the merits of the district court's denial, based on that available evidence, the district court correctly denied their motion to strike as to counts I and II. That is, only if this court finds the district court should not have permitted the discovery would Defendants prevail in this appeal. Adding to the unusual nature of the case, Plaintiff also seeks interlocutory review of the district court's decision to grant the motion to strike counts III, IV, and V, claiming pendent jurisdiction permits this court's interlocutory review.

Defendants allege generally that the Plaintiff failed to demonstrate good cause necessary to permit specific, limited discovery related to Defendants' motion to strike under the KPSPA. Finding no such error, this court is left with nothing to review regarding the merits of the district court's denial of the motion to strike as to counts I and II. Additionally, this court lacks jurisdiction to consider Plaintiff's cross-appeal related to counts III, IV, and V. In an interlocutory appeal, pendent jurisdiction does not create appellate authority for cross-appeal of a claim for which no statutory authority permitting appeal exists. Finally, after oral argument, Defendants moved for appellate attorney fees if they prevailed on the merits. As that has not occurred, the request is denied.

The district court is affirmed, the cross-appeal is dismissed, and the case is remanded.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Missouri limited liability financial services company headquartered in Kansas. In 2013, Plaintiff hired Stephen A. Greco as its National Director of Wealth Management. Shortly after being hired, Greco signed a noncompetition and confidentiality agreement (Confidentiality Agreement) that prohibited him from disclosing Plaintiff's confidential information or competing with Plaintiff during his employment and for a specified period thereafter. In December 2016, while still employed by Plaintiff and arguably (according to Plaintiff) in violation of the Confidentiality Agreement, Greco formed Spotlight Asset Group Inc., an Illinois corporation. A few months later, in March 2017, Greco resigned and began working at Spotlight.

Following Greco's resignation, Plaintiff alleged he violated the Confidentiality Agreement by soliciting Plaintiff's clients. Of course, Greco denied this allegation. To resolve this dispute, in September 2017, the parties entered into a confidential settlement agreement and mutual release (Settlement Agreement). Pursuant to the Settlement Agreement, the parties agreed to a commonly implemented mutual non-disparagement condition where the parties agreed that they would not "make any disparaging or defamatory remarks against or concerning" the other party or its releasees.

Almost three years later, in June 2020, Plaintiff initiated litigation against Defendants, alleging that they violated the Settlement Agreement and wrongly interfered with its business. Plaintiff asserted five claims:

(1) breach of contract against Greco, alleging he breached the Settlement Agreement;

5

(2) tortious interference with prospective business advantages and relationships against Defendants, alleging they wrongfully disparaged and defamed Plaintiff with the intent to interfere with its business relationships;

(3) defamation against Defendants, alleging they communicated false and defamatory statements to various financial reporters, damaging Plaintiff's reputation;

(4) tortious interference with contract against Spotlight, alleging it intentionally procured Greco's breach of the Settlement Agreement; and

(5) civil conspiracy against Defendants, alleging they acted in concert for the purpose of improperly competing against Plaintiff and wrongfully interfering with its business relationships.

A few months after Plaintiff initiated the lawsuit, Defendants moved to strike most of Plaintiff's claims under the KPSPA, alleging Plaintiff was "manifestly suing Defendants because of Mr. Greco's decision to speak with financial reporters on matters of public concern." Specifically, Defendants asked the district court to strike all of counts II and III and portions of counts I, IV, and V:

> "[T]he Court must strike (a) the portions of Count I that allege Defendant Greco made either false and disparaging statements or that Defendant Greco unlawfully disseminated confidential and proprietary information; (b) the entirety of Counts II and III, (c) the portions of Count IV that allege Defendant Spotlight induced Defendant Greco to make false and disparaging statements and disseminate confidential and proprietary information, and (d) the portions of Count V that rely upon the stricken portions of Counts I through IV."

*Discovery Requests Related to the Motion to Strike*

A month later, Plaintiff filed a motion for discovery relevant to Defendants' motion to strike. Plaintiff asserted that it needed discovery because "Defendants alone

possess evidence needed to help establish [Plaintiff's] burden of proof and respond to the issues raised in the Motion to Strike." Plaintiff's original discovery requests broadly related to its claims in the lawsuit and Defendants' motion to strike. Defendants opposed the discovery requests. In a subsequent reply brief, Plaintiff narrowed the discovery sought, alleging the "document requests are targeted to discover Defendants' specific statements to reporters, which are central to the pending Motion to Strike."

In January 2021, the district court conducted a hearing on Plaintiff's discovery motion at which it acknowledged that Defendants made "a good argument that the breadth of this [discovery] is far too beyond what is appropriate for what is needed to get to a determination on the motion to strike." However, the court also noted the need for discovery when Defendants sought a dismissal alleging the statements were protected under the KPSPA and Plaintiff did not have "the opportunity to conduct discovery [and] there were statements that were made by Mr. Greco that were in clear violation of the contractual agreement."

The district court permitted Plaintiff to take limited discovery related only to the motion to strike and ordered the parties to meet and confer on the scope of the discovery relative to the arguments made at the hearing. A month later, the district court conducted another hearing at which it reviewed and narrowed Plaintiff's discovery requests. Defendants later sought their own limited discovery under the KPSPA, which the district court likewise partially granted. Specifically, at a hearing in June 2021, Defendants orally requested a report prepared by Bain Consulting and the limited deposition of a third party. In September, Defendants then moved for the additional discovery of 28 requests for production of documents and the district court ruled that some could be served.

The parties eventually agreed to some of Defendants' request for production, including the document referred to as the Bain Consulting Report and correspondence between the Plaintiff and reporters or new entities. Thirteen additional requests from

7

Defendants remained in dispute. Defendants then moved the court to compel Plaintiff to produce the remaining documents. Due to ongoing discovery disputes, including Defendants' request for discovery, the district court held another discovery hearing on June 3, 2022—more than a year after Plaintiff's original motion for discovery in the case. A few months later the district court partially granted Defendants' motion for additional discovery. That means the discovery at issue, which resulted in evidence available to the court regarding Defendants' motion to strike, included requests from both Plaintiff and Defendants.

In response to the evidence obtained through discovery, which included requests from both parties, in the fall of 2023, Defendants filed a supplemental memorandum in support of their motion to strike under the KPSPA. The district court ultimately granted Defendants' motion to strike as to counts III, IV, and V but denied the motion as to counts I and II. The district court found Defendants "met their initial prima facie burden under the statute by showing that the claims, which are Counts I through V, [we]re based upon, relate[d] to, or [were] in response to their exercise of right to free speech or right to petition as defined under the [KPSPA]." Even so, the district court also determined "there [was] substantial competent evidence to support a prima facie case for breach of contract in the record as it relate[d] to the noncompete, nonsolicitation, and non-disparagement clauses" and therefore denied the motion to strike count I. The district court likewise determined "there [was] at least a minimal amount of information that could allow a reasonable fact finder to find in Plaintiffs' [*sic*] favor" on count II and therefore denied the motion to strike that claim as well.

Defendants filed an interlocutory appeal, and Plaintiff filed an interlocutory cross-appeal.

DISCUSSION

The KPSPA is commonly known as an anti-SLAPP statute, with SLAPP standing for "'strategic lawsuits against public participation.'" *T&T Financial of Kansas City v. Taylor*, No. 117,624, 2017 WL 6546634, at *3 (Kan. App. 2017) (unpublished opinion). Anti-SLAPP statutes have been enacted across the country with the intent of preventing frivolous or meritless lawsuits that have the potential to chill free speech. See *Doe v. Kansas State University*, 61 Kan. App. 2d 128, 135, 499 P.3d 1136 (2021); *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1055 (D. Kan. 2018). The purpose of the KPSPA is two-fold: to encourage and protect a person's right to petition, speak, and associate freely about public issues or issues of public interest under the First Amendment to the United States Constitution while also protecting the rights of others to file meritorious lawsuits. In relevant part, the KPSPA explains this purpose:

> "[t]o encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest to the maximum extent permitted by law while, at the same time, protecting the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 60-5320(b).

To effectuate its purpose the KPSPA permits a party, early in litigation, to move to strike a meritless claim that impedes the moving party's right to free speech, right to petition, or right of association under the First Amendment. K.S.A. 60-5320(d). While First Amendment protections are considered paramount, they are not unlimited. See *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985).

People cannot speak with reckless abandon avoiding all consequences, be it contractual or otherwise, simply by claiming First Amendment protection because "not all speech is of equal First Amendment importance." 472 U.S. at 758. Rather, "speech on

9

"'matters of public concern'" . . . is 'at the heart of the First Amendment Protection,'" and by contrast, "speech on matters of purely private concern is of less First Amendment concern." 472 U.S. at 758-59. Therefore, the purpose of the KPSPA includes "protecting the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 60-5320(b). Thus, courts must balance the power of the motion to strike under the KPSPA to avoid the chilling effect of frivolous litigation on First Amendment rights while also protecting a party's right to pursue potentially meritorious claims for demonstrable injury. The motion to strike is not intended to be a litigation tactic to defeat potentially meritorious and permissible litigation through onerous discovery limitations.

Courts employ a two-step analysis for evaluating whether to grant a motion to strike under the KPSPA. First, the court determines whether the moving party carried its burden of "making a prima facie case showing the claim against which the motion is based concerns a party's exercise of the right of free speech, right to petition or right of association." K.S.A. 60-5320(d). The KPSPA defines the "'[e]xercise of the right of free speech'" as "a communication made in *connection with a public issue or issue of public interest*." (Emphasis added.) K.S.A. 60-5320(c)(4). Based on the KPSPA's definition of "'[p]ublic issue or issue of public interest,'" a movant can only satisfy the initial burden in a motion to strike if they make a prima facie showing that the claims sought to be stricken under the KPSPA concern communication made in connection with health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. K.S.A. 60-5320(c)(7).

If, *and only if*, the moving party carries its initial burden to make a prima facie showing in step one does the court move to the second step to determine whether the responding party can "establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." K.S.A. 60-5320(d). Here,

10

this is the step where the district court—based on the available evidence—denied Defendants' motion to strike counts I and II under the KPSPA.

This appeal raises an issue of jurisdiction regarding the Plaintiff's cross-appeal that must also be addressed.

## I. APPELLATE JURISDICTION

The Kansas Supreme Court has consistently held that the right to appeal in Kansas is exclusively a creature of statute. See *State v. McCroy*, 313 Kan. 531, 534, 486 P.3d 618 (2021) ("[A]ppellate courts may exercise jurisdiction only when authorized to do so by statute."); *Harsch v. Miller*, 288 Kan. 280, Syl. ¶ 3, 200 P.3d 467 (2009) ("[T]he limits of appellate jurisdiction are imposed by the legislature."). When this court lacks jurisdiction, it must dismiss the appeal. *State v. Ehrlich*, 286 Kan. 923, Syl. ¶ 2, 189 P.3d 491 (2008).

In Kansas, appeals are generally available only from a final decision. K.S.A. 60-2102(a). A final decision is one in which the merits of the controversy are finally decided and where no further questions are reserved for further action. *Investcorp v. Simpson Investment Co.*, 277 Kan. 445, 454, 85 P.3d 1140 (2003). Issues may also be appealed as an interlocutory order and, relevant here, the KPSPA provides for interlocutory appeal under K.S.A. 60-5320(f)(2). In determining the appellate authority of the Plaintiff's claims, this court exercises unlimited review over statutory interpretation. *State v. Garcia-Garcia*, 309 Kan. 801, 806, 441 P.3d 52 (2019).

*Plaintiff's Cross-Appeal*

Defendants brought this appeal pursuant to K.S.A. 60-5320(f), which permits the "movant in a motion to strike" to file an "interlocutory appeal from a trial court order *denying* the motion to strike, if notice of appeal is filed within 14 days after entry of such

order." (Emphasis added.) K.S.A. 60-5320(f)(2). The plain language of the statute unambiguously limits the right to seek interlocutory review of a motion to strike under the KPSPA to *movants* challenging the district court's *denial* of the motion to strike. Consistent with the plain language of the statute, a previous panel of this court declined to exercise appellate jurisdiction over an interlocutory cross-appeal filed under the KPSPA "because nothing in K.S.A. 2016 Supp. 60-5320 authorize[s] a cross-appeal." *Taylor*, 2017 WL 6546634, at *2. Nevertheless, the Plaintiff here cross-appealed on three issues:

1. the district court erred in granting the motion to strike as to counts III, IV, and V because Defendants waived the right to seek a motion to strike, Defendants failed to meet their prima facie showing under the motion to strike, and Plaintiff established a likelihood of prevailing on the claims;
2. the district court erred in finding the Bain Report was inadmissible hearsay and thus refused to consider it in the motion to strike; and
3. the district court erred in granting the motion to strike before ruling on Defendants' objections to personal jurisdiction.

Plaintiff—not the "movant" under K.S.A. 60-5320(f)—seeks appellate review of its claims by contending this court can exercise appellate jurisdiction under the "pendent interlocutory jurisdiction rule." Pendent jurisdiction, otherwise referred to as supplemental jurisdiction, is often used by federal courts to exercise jurisdiction over state-law claims in the same action as properly pursued federal claims. *Williams v. Lawton*, 288 Kan. 768, 784, 207 P.3d 1027 (2009). Kansas appellate courts have also relied on this expansion of jurisdiction when "a certified issue in an interlocutory appeal is 'inextricably intertwined' with other issues that do not meet the criteria for an interlocutory appeal. Under the exception, the other issues may also be reviewed to allow meaningful review and promote judicial economy." 288 Kan. at 785.

Plaintiff contends "[t]he Anti-SLAPP Act is silent on whether issues can be raised by cross-appeal that will fall properly within the scope of an authorized appeal where they are intertwined with the denial." Plaintiff argues "[t]he Kansas Legislature knew, or is presumed to have known, that Kansas precedent embraced the pendent interlocutory jurisdiction rule and did nothing to limit application of the rule to Anti-SLAPP Act appeals." Plaintiff therefore concludes "[t]he Court would not usurp the Legislature by applying this established rule, first adopted by the Kansas Supreme Court in 2000 before the Anti-SLAPP Act, to this appeal."

Plaintiff's argument ignores the plain and unambiguous language of the statute. The Legislature explicitly limited the ability to seek interlocutory review of a district court's *denial* of a motion to strike to *the movant*—the person who pursued and did not obtain the motion to strike. See K.S.A. 60-5320(f)(2). Permitting the respondent to seek interlocutory review of a district court's decision regarding a motion to strike would be inconsistent with the explicit statutory language and expand appellate review where none was statutorily granted. Pendent jurisdiction does not permit such an expansion here.

In any event, Plaintiff has failed to show that their cross-appeal is inextricably intertwined with the narrow issue on appeal: the district court's decision to permit discovery related to the motion to strike that resulted in the denial of Defendants' motion to strike as to counts I and II. Plaintiff's cross-appeal is not related to the district court's denial of Defendants' motion to strike as to counts I and II—which are the only topics of Defendants' appeal. Rather, Plaintiff's cross-appeal specifically seeks review of the district court's decision to grant the motion to strike as to counts III, IV, and V. Those claims are not intertwined with Defendants' appeal.

Interestingly, Plaintiff's claim of appellate jurisdiction related to the district court's discovery decision that the Bain Report as presented constituted inadmissible hearsay is somewhat similar to Defendants' argument. It appears that Plaintiff contends the district

13

court's error regarding an evidentiary decision caused it to erroneously *grant* the motion to strike as to counts III, IV, and V. However, there is no statutory authority giving this court interlocutory appellate review authority from the district court's decision to *grant* the Defendants' motion to strike, making the argument for supplemental jurisdiction dissimilar to Defendants' claims. Therefore, the district court's evidentiary findings regarding those counts are not intertwined with a claim properly before this court. Moreover, Plaintiff concedes the Defendants' assertion that applying pendent jurisdiction to permit appellate review of an interlocutory cross-appellant claim not otherwise statutorily permitted would be novel.

If this court were to look beyond the statute's plain and unambiguous text to seek an alternative basis for supplemental interlocutory appellate jurisdiction, it would be creating a judicial exception to statutory jurisdictional requirements to allow a nonstatutorily authorized appeal—which the Kansas Supreme Court has rejected. See, e.g., *Wiechman v. Huddleston*, 304 Kan. 80, Syl. ¶ 2, 370 P.3d 1194 (2016) ("An appellate court has no authority to create an exception to statutory jurisdictional requirements to allow an appeal . . . ."); *Board of Sedgwick County Comm'rs v. City of Park City*, 293 Kan. 107, Syl. ¶ 3, 260 P.3d 387 (2011) ("An appellate court has no authority to create equitable exceptions to jurisdictional requirements . . . ."). The Legislature unambiguously foreclosed such an expansion when it adopted the KPSPA's plain language limiting the ability to seek interlocutory review to the *movant* challenging the district court's *denial* of a motion to strike. The purpose of limiting interlocutory review in this manner was to ensure that parties would not need to suffer the rigors of full-blown litigation for impermissible claims—and that purpose is not supported by permitting the nonmovant to seek interlocutory review of the district court's decision to grant a motion to strike. Accordingly, Plaintiff's interlocutory cross-appeal is dismissed for lack of appellate jurisdiction.

## II. Defendants Appeal the Denial of the Motion to Strike as to Counts I and II Under the KPSPA

Defendants' argument in this interlocutory appeal is that "[w]ithout the erroneously granted discovery, Plaintiff would have been unable to meet its burden under the second prong of the Anti-SLAPP analysis." Therefore, while Defendants' appeal stems from the district court's denial of their motion to strike as to counts I and II, the heart of the challenge relates to the district court's discovery orders. That is, Defendants do not allege the district court's denial of the motion to strike is erroneous when considering the available evidence, and do not ask this court to review the district court's denial as it stands. Essentially, Defendants assert the unique argument that if the district court had less information from which to make its decision, then Defendants would have prevailed on their motion to strike as to counts I and II. Notably, the district court permitted discovery requested by both parties—but Defendants' appeal does not appear to challenge the district court's decision to permit Defendants' requested discovery or the district court's reliance on that discovery.

In Kansas, discovery orders are generally not reviewed through an interlocutory appeal. See *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, Syl. ¶ 6, 244 P.3d 642 (2010) ("A discovery order is not a final disposition and is not a final decision."). Accordingly, following oral argument, this court sought additional briefing on this issue. In its supplemental brief, Defendants assert that they are not merely seeking a review of the discovery orders but are "expressly asking this court to reverse the district court's denial of their anti-SLAPP motion." However, at oral argument, when asked whether this court should review the denial of the motion to strike considering the same evidence the district court considered, counsel for Defendants said they were "appealing the denial of the motion because we believe the district court considered facts that it shouldn't have considered" and that if the appellate court "concludes that discovery was proper, then our appeal goes away." Moreover, nowhere in Defendants' brief or supplemental brief do

15

they argue that, *based on the available evidence*, the district court erred in denying their motion to strike as to counts I and II. That is, if the discovery is permitted, Defendants do not contend that Plaintiff failed to make a prima facie showing of a likelihood of prevailing on the merits of counts I and II.

Defendants contend that this discovery dispute is properly reviewed through the interlocutory appeal as it supports the purpose of K.S.A. 60-5320 because discovery disputes are encompassed within the denial of a motion to strike. However, unlike a traditional discovery dispute, Defendants do not contend that the permitted discovery violates an admissibility standard as irrelevant, unduly prejudicial, hearsay, or somehow not properly discoverable through the litigation generally—but merely that it was presented too early in the litigation process. Even after additional briefing, Defendants provide no example of an appellate court ordering that a district court erroneously permitted discovery *after* the district court already relied on that discovery in its decision to deny a motion to strike under an anti-SLAPP statute. See *Ruiz v. Harbor View Community Assn.*, 134 Cal. App. 4th 1456, 1461, 37 Cal. Rptr. 3d 133 (2005) (on interlocutory appeal from the denial of a motion to strike, the court ordered the district court to reconsider its decision to *deny* discovery related to the motion to strike).

The problem with attacking discovery orders in this manner is that it requires this court to consider the district court's denial of the motion to strike as to counts I and II in a hypothetical world in which the available evidence did not exist. Adding difficulty is the fact that Defendants also sought and obtained discovery that they used to support their motion to strike. So if the district court erred in its application of the standard for permissible discovery for a motion to strike, this court is strained to see how that error would not attach to the district court's determination regarding Defendants' discovery requests as well. Defendants assert no reasonable basis that this result would not impact the entire motion to strike, including the district court's decision on counts III, IV, and V on which Defendants prevailed.

Finally, under Defendants' theory, a motion to strike should be successful even when the litigation sought to be stricken is not frivolous, making a motion to strike appear to be more of a strategic, procedural gotcha mechanism rather than a genuine attempt to avoid frivolous litigation. This court cannot agree. This discussion highlights the problems with reviewing the district court's decision to permit discovery related to the motion to strike *after* the district court relied on that evidence to deny the motion.

Despite the legal and logical issues created in addressing a discovery dispute in this manner, because the discovery question is so closely tied with the district court's denial of the motion to strike as to counts I and II, this court will nevertheless address whether the district court erred in the application of the legal standard for permissible discovery related to a motion to strike under the KPSPA. See *Williams*, 288 Kan. at 785.

A.  *The Permissible Discovery Under the KPSPA*

After a party moves to strike a claim under the KPSPA, discovery is generally stayed in the underlying litigation until the motion is decided. K.S.A. 60-5320(e)(2). However, that stay is not permanent or impenetrable, so "the court, on motion and for good cause shown, may order that specified discovery, motions or other pending hearings be conducted." K.S.A. 60-5320(e)(2). Additionally, the KPSPA provides that "[o]n a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion." K.S.A. 60-5320(e)(1). Therefore, even after a motion to strike is filed under the KPSPA, the district court— upon a showing of good cause—may permit specified discovery, motions, or other pending hearings to proceed under K.S.A. 60-5320(e)(2) and may allow specific, limited discovery relevant to the motion to strike under K.S.A. 60-5320(e)(1).

Generally, the district court is entrusted with broad discretion to control discovery, and those discovery decisions "will not be disturbed on appeal in the absence of a clear

17

abuse of discretion." *Hill v. Farm Bur. Mut. Ins. Co.*, 263 Kan. 703, Syl. ¶ 1, 952 P.2d 1286 (1998). A district court abuses its broad discretion when its action "(1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, Syl. ¶ 16, 296 P.3d 1106 (2013). Defendants, as the party asserting the district court abused its discretion in permitting discovery, bear the burden of showing such abuse of discretion. See *In re Parentage of R.R.*, 317 Kan. 691, Syl. ¶ 3, 538 P.3d 838 (2023).

The KPSPA does not undermine or diminish the district court's broad authority to make discovery decisions but merely sets a different legal standard under which the district court exercises that discretion. Therefore, this court still applies an abuse of discretion standard to the district court's decision to permit discovery related to a motion to strike under the KPSPA. The legal standard for permissible discovery related to a motion to strike under the KPSPA requires a good cause showing when, generally, discovery in civil litigation requires no such showing. See K.S.A. 60-226(b) (permitting discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense"). Defendants argue that the district court abused its discretion by making an error of law when it defined good cause under the anti-SLAPP Act "to mean nothing more than 'you know it when you see it.'"

Even under the deferential abuse of discretion standard, this court exercises unlimited review over whether the district court made an error of law in the exercise of that discretion. *State v. Gonzalez*, 290 Kan. 747, 755, 234 P.3d 1 (2010). Additionally, to the extent resolution of this claim requires interpretation of the KPSPA, this court likewise exercises unlimited review. See *H.B. v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022). Therefore, this court must determine whether the district court erred in its legal interpretation of good cause to permit limited, specific discovery related to the motion to strike under the KPSPA.

Defendants contend that because the Plaintiff lacked evidence of the exact content of Greco's statements at the heart of the breach of contract and tortious interference claims in counts I and II, the Plaintiff could not meet the good cause standard to obtain discovery related to the motion to strike. According to Defendants, a plaintiff must have some yet undefined, minimum level of evidence before the district court can find good cause for a plaintiff to obtain limited, specific, relevant discovery to an anti-SLAPP motion to strike. Not only is there no law supporting such a sweeping discovery prohibition, but following Defendants' logic would create a de facto heightened pleading requirement. Moreover, Defendants understate the Plaintiff's prediscovery evidence supporting its breach of contract and tortious interference claims set forth in counts I and II.

1.    *The Plaintiff's lack of evidence regarding Greco's statements did not prohibit a good cause finding for discovery in an anti-SLAPP motion to strike.*

According to Defendants, "in a Kansas lawsuit alleging false statements, the plaintiff needs to include the content of the false statement and describe the damages it incurred in its initial pleading." Not only are the cases Defendants cite in support of this argument distinguishable, but in each case the court had evidence outside the pleadings, such as interrogatories and deposition testimony. See, e.g., *Hall v. Kansas Farm Bureau*, 274 Kan. 263, 277-78, 50 P.3d 495 (2002) (Kansas Supreme Court referenced evidence obtained through depositions and interrogatory responses related to the district court's summary judgment decision in favor of defendants); *Moran v. State*, 267 Kan. 583, 590, 985 P.2d 127 (1999) (Kansas Supreme Court cited to interrogatories and deposition statements in its reversal of the district court's summary judgment decision); *Gobin v. Globe Publishing Co.*, 232 Kan. 1, 6, 649 P.2d 1239 (1982) (appeal from trial judgment, where evidence was presented regarding reputation damages in libel action); *Schulze v. Coykendall*, 218 Kan. 653, 657, 545 P.2d 392 (1976) (appeal from summary judgment

where depositions and interrogatories were obtained), *overruled in part on other grounds by Schulze v. Board of Education*, 221 Kan. 351, 559 P.2d 367 (1977).

The *Schulze* court stated that when a petition for libel or slander fails to set forth the "alleged defamatory words spoken or published, the names of those persons to whom they were spoken or published and the time and place of their publication" the court may order the plaintiff provide a more definite statement. 218 Kan. at 657. However, the issue in *Schulze* related to the plaintiff's refusal to respond to discovery and the court's broad statement about the Kansas pleading requirements related to the defendant's need to file a motion for a more definite statement. 218 Kan. at 656-57. In any case, any indication in *Schulze* concerning a heightened pleading requirement is not supported by more recent authority. See *Rinsley v. Frydman*, 221 Kan. 297, 301-03, 559 P.2d 334 (1977) (explaining that the *Schulze* holding was about requiring the defendant to file a motion for a more definite statement to rectify insufficient pleadings); see also K.S.A. 60-209(j) (detailing the Kansas pleading requirements for libel and slander—a person may "allege generally that defamatory matter was published or spoken concerning the plaintiff, and if that allegation is not denied in the answer, it need not be proved at trial").

In Kansas, notice pleading is the rule—which requires merely that pleadings contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief" and a "demand for the relief sought." K.S.A 60-208(a); see also *H.B.*, 315 Kan. at 317 ("a pleading requires only a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment"). There is no allegation that the Plaintiff failed to sufficiently plead its breach of contract or tortious interference claims, presumably because Defendants know they were unlikely to succeed in such a motion. Kansas courts have recognized the "'sound reasons for exercising judicial skepticism towards dismissal of a petition for failure to state a claim prior to the completion of discovery.'" *Williams v. C-U-Out Bail Bonds, LLC*, 310 Kan. 775, 785, 450 P.3d 330

(2019). The Kansas notice-pleading standards are unaffected by a defendant's motion to strike under the KPSPA.

Defendants point to California defamation cases involving anti-SLAPP discovery disputes for their contention that good cause cannot be shown to justify discovery related to a motion to strike under the KPSPA when the plaintiff lacks evidence of the alleged wrongful statements. See, e.g., *Paterno v. Superior Ct.*, 163 Cal. App. 4th 1342, 78 Cal. Rptr. 3d 244 (2008); *The Garment Workers Ctr. v. Superior Ct.*, 117 Cal. App. 4th 1156, 12 Cal. Rptr. 3d 506 (2004). These cases, however, relate to discovery regarding the *actual malice* element of a defamation claim. See *Turner v. Halliburton Co.*, 240 Kan. 1, 8, 722 P.2d 1106 (1986) (discussing actual malice and when a plaintiff in a defamation case must also prove the defendant had an evil-mindedness or specific intent to injure).

In *Garment Workers*, the court did not deny all discovery but determined that discovery related to malice was not appropriate until the court determined whether the plaintiff could establish the other elements of a defamation claim: "We conclude under the facts of this case the trial court abused its discretion in permitting discovery *on the issue of actual malice* before first determining, after briefing and argument, whether the plaintiffs had a reasonable probability of establishing the other elements of their libel cause of action." (Emphasis added.) 117 Cal. App. 4th at 1159. Similarly, in *Paterno* the court limited discovery regarding malice in a libel action: "Accordingly, plaintiffs who bring defamation actions subject to the constitutional malice standard cannot show good cause for discovery on the question of actual malice without making a prima facie showing that the defendant's published statements contain provably false factual assertions." 163 Cal. App. 4th at 1350.

These cases merely suggest that in anti-SLAPP actions for defamation, California courts may limit discovery related to malice until the plaintiff can show an ability to meet the other elements of the defamation action. Despite Defendants' contention that Kansas

21

courts apply "defamation principles to non-defamation tort claims that are grounded in false statements," those California cases limiting discovery regarding malice are inapplicable here. This appeal is not related to a defamation claim—it is about Plaintiff's breach of contract and tortious interference claims. Defendants do not contend that the Plaintiff was required to prove actual malice in support of counts I and II, or that the district court erred by permitting discovery regarding actual malice before the Plaintiff established other elements of their claims.

2.      *Limited, specific discovery is permitted when a qualified immunity defense is asserted.*

Defendants also contend that the Plaintiff's ability to obtain discovery should be limited because motions to strike in anti-SLAPP actions are similar to a litigant's use of a qualified immunity defense. According to Defendants, discovery is "never available in qualified immunity cases if the plaintiff only makes vague allegations of unidentified constitutional misconduct, or if the plaintiff fails to identify the specific constitutional provision violated." Defendants assert that "'[u]nless the plaintiffs allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" See *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

Yet, contrary to the Defendants' arguments, courts permit narrow discovery related to the qualified immunity defense. In *Mitchell*, the court explained that when "the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment *if discovery fails to uncover* evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." (Emphasis added.) 472 U.S. 526. The Tenth Circuit Court of Appeals has explained that when qualified immunity is raised as a defense, there is a right to discovery "narrowly tailored" to the qualified immunity issue. *Maxey v. Fulton*, 890

22

F.2d 279, 282-83 (10th Cir. 1989). When a qualified immunity defense is asserted, "discovery may be necessary before a motion for summary judgment on qualified immunity grounds can be resolved. However, any such discovery must be tailored specifically to the immunity question." *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992); see also *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1387 (10th Cir. 1994) (discovery permitted even when qualified immunity is raised). Even if this court recognizes similarities between the purpose and effect of qualified immunity defense to a motion to strike under the KPSPA, that does not prohibit discovery as Defendants contend or effectively heighten the pleading requirements.

When a defendant moves to strike a claim under the KPSPA, the central issues and barriers to continued litigation are whether the statements at issue fall within the protection of the KPSPA and whether the plaintiff can overcome that barrier by making a prima facie showing of a likelihood of success on the merits of the claims. The KPSPA does not require the Plaintiff to make a prima facie showing of a likelihood of success on the merits without discovery. See K.S.A. 60-5320(e). "In order to establish the necessary probability of prevailing, plaintiff was required both to plead claims that were legally sufficient, and to make a prima facie showing, *by admissible evidence*, of facts that would merit a favorable judgment on those claims, assuming plaintiff's evidence were accepted." (Emphasis added.) *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 584, 132 Cal. Rptr. 2d 789 (2003). In *Doe*, a panel of this court explained that the plaintiff's pleadings were insufficient to defeat the motion to strike, but that the plaintiff "could have cured his deficient pleading by supplementing it with an affidavit, or even sought discovery to search for evidence relevant to the court's determination of the motions to strike." *Doe*, 61 Kan. App. 2d at 150.

Here, even without discovery, the Plaintiff asserted facts related to the Defendants' allegedly violative statements made to reporters that breached the Settlement Agreement and constituted tortious interference. Only after Defendants moved to strike the Plaintiff's

23

claims under the KPSPA with a supporting affidavit claiming the statements were made to reporters on matters of public concern—namely an SEC whistleblower complaint and related investigations—did the Plaintiff need more specific evidence to demonstrate its ability to prevail on the merits despite the potentially protected status of the statements. Moreover, the Plaintiff alleged "that Defendants have acknowledged that they are withholding facts and threatened to provide 'much more elaborate detail' concerning" the statements and that "information concerning Defendants' knowledge, intent, and private interactions is *singularly possessed by Defendants*," which inhibited the Plaintiff's ability to defend against the motion to strike. The harm from permitting this discovery appears to be that the Plaintiff was able to defeat the motion to strike by making a prima facie case of a likelihood of success on the merits of counts I and II.

The KPSPA permits a plaintiff to seek specific, limited discovery relevant to a motion to strike, including to the plaintiff's prima facie case of a likelihood of prevailing on the merits of their claims under K.S.A. 60-5320(d). See *1-800 Contacts, Inc.*, 107 Cal. App. 4th at 593-94 (discovery can be used when trying to prove a plaintiff may prevail on its claim).

B. *The District Court's Good Cause Standard*

Although a party may seek specific, limited, relevant discovery under the KPSPA—the district court must still find good cause to permit that discovery. K.S.A. 60-5320(e). Defendants argue that the district court used the wrong "good cause" standard and erroneously applied a "you know it when you see it" standard to permit limited, specific discovery. Defendants describe the district court's good cause standard as "functionally indistinguishable from the concept of relevance." Defendants do not challenge any specific discovery requests—but apparently contend that the district court erred in finding good cause for any of the Plaintiff's discovery requests.

24

As Defendants acknowledge, there is no rule for what constitutes "good cause" for discovery in an anti-SLAPP action under K.S.A. 60-5320, therefore this court must look to how that standard has been applied in other contexts. Plaintiff, citing standards for legislative interpretation, contends that the phrase "good cause" in discovery has a legal meaning and that words used in legislation should be afforded their common meaning, or their "peculiar and appropriate meaning in law." K.S.A. 77-201. Accordingly, Plaintiff urges this court to give broad meaning to the good cause requirements citing its application and interpretation in 1960s discovery proceedings. See, e.g., *Alseike v. Miller*, 196 Kan. 547, 552, 412 P.2d 1007 (1966). However, the *Alseike* court's good cause interpretation related specifically to the discovery statute in effect at the time, K.S.A. 1963 Supp. 60-234, which was modeled off the then-applicable federal rule and included a "good cause" requirement.

The Kansas discovery statute has since eliminated the "good cause" requirement to justify discovery. See K.S.A. 60-226(b); *Henry Enters., Inc. v. Smith*, 225 Kan. 615, 618, 592 P.2d 915 (1979). Therefore, the court's prior interpretation of "good cause" supporting relevant discovery is distinct from its use in the KPSPA. Plaintiff's argument that "good cause" for specific, limited discovery under K.S.A 60-5320(d) should mean nothing more than accomplishing full disclosure of the facts or reaching beneficial objectives is rejected. The use of "good cause" in K.S.A. 60-5320(e) creates a boundary within the scope of otherwise generally permissible discovery under K.S.A. 60-226(b) to only permit discovery reasonably necessary for the court to make its determination regarding the motion to strike under K.S.A. 60-5320(d).

Defendants urge what they refer to as the California standards for good cause. According to Defendants, the California courts apply the following standard to determine whether good cause exists for limited, specific discovery related to an anti-SLAPP motion to strike:

"[T]he discovery movant needs to specify the information at issue, show that discovery is necessary to litigate the motion to strike, show that the opposing party or a witness possesses the information, explain why the movant cannot obtain it from another source, and demonstrate that the information will be used for a proper purpose. These requirements are conjunctive, and if the moving party cannot demonstrate all five of these things, limited anti-SLAPP discovery is improper."

Without adopting this standard or even determining whether this accurately reflects the California cases Defendants cite, it is unclear which part of this standard Defendants contend was not met. Even so, as explained below, the district court significantly narrowed the Plaintiff's discovery requests and explained its good cause for ordering discovery, which meets several of these factors.

First, in Kansas, discovery related to a motion to strike is permitted more broadly than in California. Kansas permits the district court "on the court's own motion and on a showing of good cause" to order limited, specified discovery. K.S.A. 60-5320(e)(1). Unlike in California, in Kansas the court need not wait for a party to seek discovery but may determine, based on its own needs, that good cause exists for limited, specific discovery. Therefore, the court's need for information to make its decision regarding the motion to strike must be a consideration in determining whether good cause exists for such discovery. As explained below, the district court explained its need for information to make its decision as a reason that good cause existed for the limited, specific, relevant discovery.

Contrary to Defendants' arguments, the district court's "good cause" finding was not a mere coin flip. Defendants reference the court's explanation that "[t]he parties have done a good job talking about what good cause is. It's probably one of those things you know it when you see it and you know it when it's not." The court clearly stated that it heard and accepted the parties' arguments related to good cause. It then used a common expression applied to amorphous, undefined legal standards to explain that "good cause"

26

holds those similar characteristics. It is not uncommon for the Kansas Supreme Court to find that a particular standard is not amenable to definition—but that its common usage or description is sufficient to allow its application. See, e.g., *State v. Hill*, 189 Kan. 403, 413, 369 P.2d 365 (1962) (finding term *provisions* "difficult to judicially define"); *Wolcott & Lincoln v. Butler*, 155 Kan. 105, 122 P.2d 720 (1942) (finding the word *account* "difficult to define, having various meanings, depending somewhat upon the surrounding circumstances and the connection in which it is used"). The good cause standard carries some of those same characteristics.

The district court described its reasons for finding good cause for allowing discovery, in part, when it noted the court's need to balance and weigh the parties' arguments to ensure accurate application of the law. To that end, the court explained that it needed discovery to determine whether the statements at issue "fit under the silo of a protected statement." The court outlined the need to balance the KPSPA's purpose with the court's ability to properly analyze the claim. It stated that "full-blown discovery . . . would undercut the entire purpose" and that "[t]here needs to be good cause" for the discovery as well as "relevant to the motion to strike." The court further explained that:

> "I'd be hesitant to invite the dismissal of all actions and unbeknownst to the plaintiff because they haven't had the opportunity to conduct discovery, that there were statements that were made by Mr. Greco that were in clear violation of the contractual agreement entered into by the parties, but they were just not afforded that opportunity to determine, ascertain what those were specifically."

The court clarified that good cause "is supportive of bringing out the relevant facts so the determination can be made that is correct." Essentially, the court said that when the Plaintiff has no access to the information, good cause exists for limited, specific, relevant discovery to allow the court to have enough information to accurately evaluate the Defendants' motion to strike when the Plaintiff does not have access to the information. This description comports with long-standing Kansas law regarding discovery and the

27

California cases Defendants cite. See, e.g., K.S.A. 60-226(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable."); *1-800 Contacts*, 107 Cal. App. 4th at 593 (describing good cause to include "a showing 'that a defendant or witness possesses evidence needed by plaintiff to establish a prima facie case'" and requiring the showing to "include some explanation of 'what additional facts [plaintiff] expects to uncover'"). Here, the district court's good cause determination is consistent with another California court that explained good cause for discovery is when "a showing that the specified discovery is necessary for the plaintiff to oppose the [anti-SLAPP] motion and is tailored to that end." *Britts v. Superior Ct.*, 145 Cal. App. 4th 1112, 1125, 52 Cal. Rptr. 3d 185 (2006).

Good cause for limited, specific discovery related to a motion to strike in an anti-SLAPP action under K.S.A. 60-5320(e) exists when the court finds that the information sought through formal discovery cannot be readily obtained through other means and that the information will assist the district court in determining whether the parties have established the elements supporting or defeating a motion to strike. This court sees no error of law in the district court's application of the good cause standard under the KPSPA.

Finally, to the extent that Defendants are asserting that good cause did not exist to order the discovery Plaintiff originally sought, the district court agreed with that argument and limited the permitted discovery. At one of the hearings on Plaintiff's discovery motion, the district court acknowledged that Defendants made "a good argument that the breadth of this [discovery] is far too beyond what is appropriate for what is needed to get to a determination on the motion to strike." Thus, the district court's discovery order was far narrower than the requests. Defendants failed to demonstrate that

28

the district court abused its discretion in permitting specific, limited, discovery relevant to the motion to strike under K.S.A. 60-5320(e).

As Defendants explained at oral argument, because this court finds no abuse of discretion in the district court's good cause finding for limited, specific discovery, the Defendants' appeal "goes away." The district court's denial of the Defendants' motion to strike the speech-related aspects of the Plaintiff's counts I and II is accordingly affirmed. It is therefore unnecessary for this court to pass judgment on Plaintiff's alternative bases for affirmance on this issue.

## III. DEFENDANTS ARE NOT ENTITLED TO ATTORNEY FEES

Following oral argument, Defendants filed two separate motions seeking attorney fees and costs related to prosecuting their appeal and defending against Plaintiff's cross-appeal. Plaintiff filed a combined response, and Defendants then filed a reply.

In support of the Defendants' motion for attorney fees and costs for *prosecuting* their appeal from the denial of the motion to strike as to counts I and II, Defendants rely on K.S.A. 60-5320(g), which provides that a party prevailing on a motion to strike under the KPSPA shall be awarded costs and reasonable attorney fees:

> "The court shall award the defending party, upon a determination that the moving party has prevailed on its motion to strike, without regard to any limits under state law:  (1) Costs of litigation and reasonable attorney fees; and (2) such additional relief, including sanctions upon the responding party and its attorneys and law firms, as the court determines necessary to deter repetition of the conduct by others similarly situated. If the court finds that the motion to strike is frivolous or solely intended to cause delay, the court shall award to the responding party reasonable attorney fees and costs related to the motion."

29

Defendants also cite Kansas Supreme Court Rule 7.07(b)(1), which states: "An appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." (2026 Kan. S. Ct. R. at 52.)

In addressing its motion for fees and costs for appealing the denial of the motion to strike as to counts I and II, Defendants concede they would only be entitled to reasonable fees and costs if they prevailed on their appeal and were granted their motion to strike. Defendants have not so prevailed. Accordingly, they are not entitled to reasonable attorney fees and costs under K.S.A. 60-5320(g) or Rule 7.07(b) for prosecuting their appeal of the denial of the motion to strike counts I and II.

In support of their motion for fees for defending against Plaintiff's cross-appeal related to counts III, IV, and V, Defendants again rely on Rule 7.07(b)(1) and K.S.A. 60-5320(g)—as identified above. They admit the district court ruled in their favor on their motion to strike as to Plaintiff's counts III, IV, and V, but state that the district court has not yet awarded reasonable fees because of the appeal. On appeal, an award of fees under Rule 7.07(b) is discretionary. *Cain v. Jacox*, 302 Kan. 431, 439, 354 P.3d 1196 (2015). While Defendants may be entitled to an award of reasonable attorney fees and costs by the district court, because this case is remanded to the district court for continued proceedings that decision can and should be addressed by the district court. Defendants have not persuaded this court that they are entitled to an attorney fees award by this court.

Accordingly, Defendants' requests for attorney fees and costs are denied.

CONCLUSION

The motion to strike under the KPSPA is not a tool to prevent meritorious claims with demonstrable injury through onerous discovery limitations. Defendants' claims regarding the district court's discovery orders are denied and thus the district court's

30

denial of Defendants' motion to strike as to counts I and II is affirmed. The Plaintiff's cross-appeal is dismissed for lack of appellate jurisdiction.

Affirmed in part, dismissed in part, and remanded.